# Exhibit K

# INTERNATIONAL COOPERATION AGREEMENT

**THIS AGREEMENT** dated as of the 2nd day of January, 2011,

BETWEEN:

>**WASTE2ENERGY HOLDINGS INC.**, a corporation incorporated under the laws of the State of Delaware ("**W2E**")
>
>- and -
>
>**WASTE2ENERGY TECHNOLOGY INTERNATIONAL LIMITED**, a company organized and existing under the laws of the Isle of Man ("**International**")
>
>(W2E and International are collectively referred to herein as the "**Grantors**")
>
>- and -
>
>**WASTE TO ENERGY CANADA INC.**, a corporation incorporated under the laws of the Province of British Columbia, Canada (the "**Grantee**")

**WHEREAS** the Grantors have been developing an energy from waste facility at Dargavel in the United Kingdom;

**AND WHEREAS** the Grantee is interested in the supporting the development and completion of the Dargavel energy from waste facility as per the Completion of Works SOW (attached) by the Grantors;

**AND WHEREAS** the Grantee is prepared to provide certain funds up to the amount of FIVE HUNDRED AND THOUSAND US DOLLARS (USD$500,000) to facilitate and allow for the development and completion of the Dargavel energy from waste facility, on the terms and conditions as provided for in this international Cooperation Agreement (the "**Agreement**").

**NOW THEREFORE** in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party hereto, the parties hereby agree as follows:

1. **Ownership of Escrow Material**

   W2E represents that it owns directly or indirectly, through International or otherwise, the Technology (as defined herein) and the Escrow Material (as defined in the License Agreement (as defined herein).



2.  **Initial Funds**

    The Grantee will provide to the sub-contractors as identified under the "Dargavel Works to Complete SOW" the sum of up to FIVE HUNDRED THOUSAND US DOLLARS (US$500,000) of which US$250,000 have already been advanced by the Grantee (the **"Funds"**) to be used for the development and completion of the Dargavel energy from waste facility located in Dargavel in the United Kingdom currently being developed by the Grantors (the **"Dargavel Facility"**).

3.  **Access to Facility**

    The Grantors will assist the Grantees in working with the owner of the Dargavel facility in order to provide such reasonable access as may be requested by the Grantee to the Dargavel Facility by the Grantee and its clients for review and inspection and the Grantors shall provide to the Grantee weekly updates as to the progress of the development of the Dargavel Facility.

4.  **Access to Markets**

    The Grantors hereby grant, and will cause all of their affiliated entities as necessary to grant, authorize and provide a non-exclusive license to the Grantee of the ability and right to deploy the Grantor's technology, including but not limited to its: (i) cBOS, meaning one standard "continuous batch oxidation system" (cBOS) train consisting of a multiple primary chambered and one secondary chamber "plug and play" module in sizing from 20 metric tonnes up to 60 metric tonnes inclusive of control unit but exclusive of all ancillary 3rd party equipment such as SCADA, emissions controls, power module (boiler, turbine or direct fire engine), stand-by generators; (ii) sBOS, meaning one standard "single batch oxidation system" (sBOS) consisting of one primary chamber and one secondary chamber "plug and play" module in any size configuration from 0.5 metric tonnes up to 60 metric tonnes inclusive of control unit and exclusive of any ancillary 3rd party equipment such as emissions controls, power modules, stand-by generators; and (iii) COR, meaning one standard "continuous oxidation reactor" (COR) consisting of on primary continuous feed reaction tower of any size/capacity and if required one secondary energy recovery tower inclusive of all control units and exclusive of any ancillary 3rd party equipment such as emissions controls, power modules, stand-by generators (the cBOS, sBOS and COR technology are collectively referred to herein as the **"Technology"**) on a global scale in all global markets without any territorial or jurisdiction limitations whatsoever on the same terms and conditions as contained in the license agreement dated June 7, 2010 between the Grantee and International (the **"License Agreement"**) except for the following additional conditions:

    (a)   all prospective Grantee clients will be cross-checked with the Grantors to ensure no duplication;

    (b)   Once a project has been approved by Grantors, and such approval will not be unreasonably withheld the Grantee has twelve (12) months from the date thereof to procure a PEDS contract. In the event that this does not occur, Grantee will lose rights to that project unless an extension is specifically agreed by Grantor in writing.

    (c)   the Grantee will not set up sub-offices in any country other than those covered by exclusive licenses from the Grantors or their affiliates in favour of the Grantee or its affiliates (the **"WtEC Countries"**);



(d) the Grantee will not actively advertise outside of Canada;

(e) the Grantee will pay to the Grantors a royalty on the value of the equipment deployed (the "**Deployed Value**") as defined by the CDN License agreement.

(f) In the event Grantor has exclusive agreements with third parties for specific territories, Grantee will respect these rights and refer any and all enquiries for W2e products to the respective third party. However, there may be instances when Grantee may be better positioned to develop a project in an exclusive territory. Under these circumstances and, at its sole discretion, which will not be unreasonably withheld,, Grantors, may permit Grantee access to such exclusive territory. Such approval will be provided in writing and contain any covenants, including but not limited to, compensation to the exclusive licensee / developer for that territory

5. **Payment of Funds**

The Grantee will provide the Funds to the contractors and other creditors of the Dargavel Facility directly as directed by the Grantors upon the provision of copies of the invoices by the Grantors to the Grantee. The Grantee shall have an opportunity to review all such invoices and review and confirm same with the Grantors prior to advancing any funds under this Agreement. In no case will the Grantee be obligated to pay the Funds directly to the Grantors. Funds remitted towards W2e costs and / or repayment of past due amounts owing to subcontractors will not count towards the remaining $250,000 sum.

6. **Additional Funds**

Any amounts in addition to the Funds that the Grantee may agree to provide to the Grantors will only be provided and released in accordance with an agreed payment schedule and defined milestones as agreed to between the Grantors and the Grantee.

7. **Release from Escrow**

The same Release from Escrow terms will be used in this agreement as defined under the CDN License agreement and amendments.

8. **Performance**

All parties agree to do everything necessary to ensure that the terms of this Agreement take effect.

9. **Waiver/Non-Performance**

The failure or delay on the part of any party to exercise or enforce any right, power or remedy conferred upon it under this Agreement shall not be deemed to be a waiver of any such right, power or remedy or operate to bar the exercise or enforcement thereof at any time or times thereafter.

## 10. Force Majeure

It is agreed between the parties that neither party shall be held responsible for damages caused by delay or failure to perform his undertakings under the terms of this Agreement when the delay or failure is due to fires, strikes, floods, acts of God or the Queen's enemies, lawful acts of public authorities, or delays or defaults caused by common carriers, which cannot reasonably be foreseen or provided against.

## 11. Cost of Agreement

All costs and expenses (including without limitation, the fees and disbursements of legal counsel) incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

## 12. Obligations Joint and Several

The obligations of the Grantors to the Grantee hereunder shall be both joint and several.

## 13. Time the Essence of the Agreement

Time is of the essence in all respects of this Agreement.

## 14. Notices

Unless otherwise permitted by this Agreement, all notices, requests, demands or other communications hereunder shall be in writing and shall be deemed to have been fully given if personally delivered to the party to whom the notice or other communication is directed, or if both e-mailed and faxed to such party.

In each case notice shall be sent to:

if to the Grantors, at:

WASTE2ENERGY HOLDINGS INC.
•

Attention: Peter Bohan, CEO
email: pbohan@waste2energy.com

if to the Grantee, at :

WASTE TO ENERGY CANADA INC.
•

Attention: Alistair Haughton, President
email: alistair@wtecanada.com

or to such other address as each party may from time to time notify the other of in writing.



15. **Amendments**

    No change or modification of this Agreement shall be valid unless it be in writing and signed by each party.

16. **Further Assurances**

    The parties agree that each of them shall, upon reasonable request of the other, do or cause to be done all further lawful acts, deeds and assurances whatever for the better performance of the terms and conditions of this Agreement.

17. **Headings**

    The headings used in this Agreement are for convenience only and are not to be considered a part of this Agreement and do not in any way limit or amplify the terms and provisions of this Agreement.

18. **Severability**

    If any term or provision of this Agreement or an application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to whom or to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this Agreement shall be valid and enforceable to the full extent permitted by law.

19. **Governing Law**

    This Agreement shall be governed by and construed in accordance with the laws of the Province of Alberta and the laws of Canada applicable therein. The parties hereby irrevocably attorn to the jurisdiction of the Courts of the Province of Alberta.

20. **Heirs, Successors, Assigns**

    This Agreement shall enure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns. This Agreement may not be assigned by any party without prior written consent of the other party hereto.

21. **Currency**

    Unless otherwise indicated, all dollar amounts referred to in this Agreement are in United States of America funds.

*[Intentionally left blank]*

6

22. **Counterparts**

This Agreement may be executed in separate counterparts and all executed counterparts when taken together shall constitute one (1) Agreement. The parties shall be entitled to rely on delivery by facsimile transmission or other electronic transmission of a scanned copy of the executed Agreement and such facsimile or scanned copy shall be legally effective to create a valid and binding Agreement.

IN WITNESS WHEREOF the parties hereto have executed this Agreement as at the date first above written.

| WASTE2ENERGY HOLDINGS INC. | WASTE2ENERGY TECHNOLOGY INTERNATIONAL LIMITED |
|---|---|
| Per: _[signature]_  Name: _Gree Boran_  Title: _CEO_ | Per: _[signature]_  Name:  Title: _Director_  c/s |
| Per: _____  Name:  Title | Per: _____  Name:  Title |

**WASTE TO ENERGY CANADA INC.**

Per: _____
  Name:
  Title

C:\Documents and Settings\Main User\Local Settings\Temporary Internet Files\Content.IE5\XPJX4Y5F\International Cooperation Agreement - Final - V3 033111[1].docx