# Exhibit N



Waste to Energy Canada Inc.
2267- 10th Ave West
Vancouver, BC Canada
V6K 2J1

# Offer to Acquire Assets

**To:** Waste2Energy Holdings Inc.

**From:** Alistair Haughton, WtEC Inc.

**Date:** June 17th, 2011

**Re:** Revision to original Offer to Acquire Assets of W2E Holdings Inc. (**"Offer to Acquire Assets"**)

This document is "Strictly Confidential" and not to be released in whole or part without the written consent of WtEC and W2E

## Preamble:

It is our intention and belief the core and essence of this transaction is structured in such a way that provides relief and mutual benefit to both W2E and WtEC inclusive of their combined stakeholders. This agreement contemplates placing both parties in a position to enhance, execute and profit from the IP while ensuring the stakeholders of both parties realize long term benefits and rewards. We trust this will meet your approval.

The following information represents the terms and conditions upon which Waste to Energy Canada Inc. offers to acquire all of the assets and undertakings of Waste2Energy Holdings Inc. as defined below (the "Transaction").

## Parties:

a) Waste to Energy Canada Inc., a privately held British Columbia corporation ("WtEC").

b) Waste2Energy Holdings, Inc., a Delaware corporation that trades on the pink sheets ("W2E").

## Consideration:

NOW THEREFORE, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all the parties hereto, the parties hereto agree as follows:

## (1) Limitations:

a) Closing of the transaction is in both parties best interests and by such; each party agrees to a closing of no later than August 13th, 2011.

b) Closing of the Transaction is contingent upon the realization of all of the conditions listed below. WtEC and W2E each retain the right to terminate the acquisition process at any time in the event that any of the below terms are unable to be completed.



c) This agreement is conditional on:

1. WtEC purchasing all rights and privileges to the IP held by W2E and further defined below in points 2 through 6:

2. **Title to Purchased Assets:** W2E is the legal and beneficial owner of all of the Purchased Assets including cBOS, sBOS, COR and PLC systems and codes, with good and marketable title thereto, free and clear of all Encumbrances, and have the exclusive right to possess and dispose of all of the assets necessary to conduct the Business (the "Purchased Assets") but not including the Excluded Assets, as defined in the Formal Agreement. The Purchased Assets include all the Intellectual Property as defined in section C.3 which is necessary for WtEC to conduct the Business. The Business means the business as was and is presently conducted by W2E, all as to be more particularly defined in the Formal Agreement.

3. **Intellectual Property (IP):** all intellectual property used in the Business, including all patents, trade-marks, trade names, brand names, trade designs, service marks, copyrights, processes, know how, trade secrets and all licenses and similar rights and property which are necessary or incidental to the conduct of the Business ("IP"), and are valid and subsisting and held by the Vendor with good and marketable title and are in good standing free and clear of all security interests, claims, liens, objections and infringements of every nature and kind and all registrations therefor have been kept renewed and are in full force and effect. The operations of the Business, the manufacture, storage, use and sale by it of its products and the provision by it of its services do not involve infringements or claimed infringement of any patent, trade-mark, trade name, brand name, copy right, invention, process, know-how, formula or trade secret which the Vendor is presently using or the use of which is necessary for the Business. (Must include all upgrades and advancements on IP made by current owners/licensors of the tech i.e. all IP advancements are assigned to WtEC).

4. an assignment of all current license agreements, distribution agreements, contracts and the like ("Assigned Contracts") to WtEC represented by an executed original of each of the written Assigned Contracts or a photocopy of the same if that is the only available document in W2E's records;

5. an assignment, assumption and indemnity agreement with respect to the Assigned Contracts and the assumed liabilities ("Assumed Liabilities"), in form and substance satisfactory to WtEC, acting reasonably, duly executed by W2E;

6. all necessary conveyances, assurances, transfers, bills of sale, assignments and any other instruments necessary or reasonably required to transfer the Purchased Assets to the Purchaser with good title, free and clear of all Encumbrances, in registrable form if required and otherwise in form and substance satisfactory to WtEC, acting reasonably;



Waste to Energy Canada Inc.
2267- 10th Ave West
Vancouver, BC Canada
V6K 2J1

7. This agreement is conditional on the completion of a Formal Agreement (as defined below) which will include such representations and warranties and other conditions are usual for a transaction of this nature and shall be modified to as required to meet applicable rules and regulations in the USA and Canada.

(2) <u>Terms:</u>

a) This Offer to Acquire Assets is intended to be a binding agreement enforceable against the parties hereto in accordance with its terms.

b) Under this Offer to Acquire Assets, based on Purchased Assets being delivered to WtEC including the IP, WtEC will pay USD$2.0M cash directly to W2E in 4 monthly installments of USD $500k per month. These funds will be paid to W2E in 4 equal payments of USD$500k per month. The first USD$500k will be released immediately upon closing.

c) In addition; WtEC agrees to an earn-out to be paid to W2E based on the following: WtEC will pay to W2E a sum equal to 1.25% of total accumulated revenue on December 31st, 2013 if the minimum target of USD$100m in accumulated revenue is reached on or before that date. This earn-out will be paid in addition to the USD$11.5m royalty payments.

d) W2E and WtEC agree to:

1. WtEC to pay W2E a royalty scheme utilizing the same schedule of rates as in WtECs CDN License Agreement i.e. USD$500K per 60mtpd cBOS train or COR and sBOS as defined under the CDN License Agreement. This royalty fee will not be broken out or contingent on the tenants of the CDN agreement i.e. split between the Royalty scheme and service supply agreement. WtEC will simply pay the USD$500k per 60mtpd cBOS train;

2. the royalty scheme will represent a total value not exceeding USD$11.5M. The Royalty scheme will cease once WtEC achieves the USD$11.5m paid to W2E.

e) W2E receives a non-exclusive Distribution Agreement (Distribution Agreement) to distribute the cBOS, sBOS and COR technologies in the US and Caribbean. WtEC will actively support W2E in its endeavors to become a profitable business entity in its territory and will create formal support mechanisms (sales & engineering support, financial and bonding support etc.) as part of the non-exclusive agreement. For business continuity and the avoidance of conflict this Distribution Agreement will at a minimum address the tenants listed below:



    i. WtEC and W2E will have a clearly defined Sales Formula on what materials and market approach will be presented.

    ii. W2E will notify WtEC of potential projects before project cultivation is progressed.

    iii. WtEC will immediately cross check the project against its data base to ensure another project is not currently contemplated in the area, inclusive of project buffer zones.

    iv. If no conflict is found then WtEC will grant W2E the authorization to proceed. A more detailed project authorization, engagement and deployment policy will be present in the final sales contract.

f) W2E to negotiate and manage internally all issues pertaining to:
1. Creditor repayment;
2. Deb and note holder standstills and forbearances if required;
3. Past Employee debts, other than those mutually agreed to by the parties and detailed in the final purchase and sale agreement.
4. Becoming current with regulatory filings and operating as a going concern;
5. Any restructuring of W2E's business enterprise.

g) WtEC & W2E will work with Mr. Jim Hennessey to:
1. Repair the relationship between Jim Hennessey and WtEC/W2E;
2. Negotiate how the original Ascot Master Supply Agreement can be maintained in good standing;
3. Financially support the completion of works at Dargavel upholding the agreed SOW and thus receiving a successful hand over certificate through the deposit into Escrow of £$330K. Please Note: the deposits of these funds are conditional on W2E engaging and successfully ensuring:
    i. All projects booked by clients outside of Ascot's original MSA are preserved and not bound to acquire supply or services from Ascot;

    ii. WtEC will be allowed to tour perspective clients through the Dargavel facility until such time a suitable replacement facility is nominated;

h) W2E will undertake and ensure all past and present clients of W2E in respect of the IP are instructed that all improvements, upgrades, either in the core design, PLC control systems, or deployment will at closing be subsequently transferred to WtEC and be recognized under this agreement as intrinsically tied to and irrevocable. W2E will release all claim and title to these. WtEC further undertakes to ensure all past current and future clients of the IP are supported and provided with the opportunity



Waste to Energy Canada Inc.
2267- 10th Ave West
Vancouver, BC Canada
V6K 2J1

to benefit from such upgrades and technology improvements inclusive of providing maintenance and operations contracts to these valued clients.

i) Under this agreement WtEC agrees to accept and rectify the outstanding warranty issues relating the sBOS supplied by W2E to Hickam Air force Base on Wake Island.

j) This Offer to Acquire Assets and closing of the Transaction is subject to legal review and approval, completion of a formal agreement with the necessary modifications to reflect the terms of this Offer to Acquire Assets (including all conditions contained in the Offer to Acquire Assets), which agreement will contain representations and warranties and conditions customary to transactions of this nature (the "Formal Agreement") and the parties agree to execute the Formal Agreement in such form.

k) This Offer to Acquire Assets expires at 12:00pm EST on Friday, June 24th, 2011. The Final Purchase and Sale Agreement will be executed by both parties by 12:00pm EST on Monday, August 1st, 2011.

l) The Closing Date will be 11:59pm Pacific Time on Wednesday August 13th, 2011 or such other date the parties mutually agree.

m) Upon execution of this Offer to Acquire Assets, W2E agrees that commencing on the date thereof, it shall not, directly or indirectly, have discussions or negotiations with third parties, regarding any sale, assignment, license or transfer of any of W2E's assets or its shareholders of their interest in W2E whether by a sale of its business, shares of W2E or its subsidiaries, or sale of its assets or otherwise, without the express prior written consent of WtEC. This condition expires on the date the acquisition fails to be executed by both parties and or an official rejection of the asset purchase is proffered and received.

n) In addition to paragraph (m) hereof, W2E agrees to a standstill period commencing on the date of execution of this Offer to Acquire Assets up until the Closing Date whereby no new material agreements or material contracts may be entered into by W2E including but not limited to financing arrangements, operational, lease or license agreements, employment or contractor agreements for hiring or termination, share or other capital structure transactions, without the express written consent of WtEC.

o) The Transaction will include all the Purchased Assets including the IP and the Business as a going concern including that under development, research and development rights, projects under development and project pipeline, licenses,



Waste to Energy Canada Inc.
2267- 10th Ave West
Vancouver, BC Canada
V6K 2J1

distribution agreements and any other goodwill or intangible assets owned by W2E or any of its subsidiary companies. WtEC undertakes to adhere to the following policy in regards to the royalty stream:

1. All royalties received will be treated as first in first out and will be used for paying down the USD$11.5m as per section 2.d.1&2

p) All parties hereto shall negotiate in good faith at completing a mutually acceptable Formal Agreement and related documents for approval, execution, and delivery at the earliest reasonable and practical dates.

q) Upon closing of the formal purchase agreement; WtEC agrees to cover reasonable legal costs and expenses incurred by W2E in connection with this Offer to Acquire Assets and the Formal Agreement and all ancillary documents, including expenses of its legal and other representatives. These costs must be budgeted and demonstrated by W2E and agreed to by WtEC prior to engagement of such services.

r) Except as and to the extent required by law, without the prior written consent of each party, all parties shall, and each shall direct its representatives not to, directly or indirectly, make any press release, public announcement, public comment, statement or communication with respect to, or otherwise disclose or permit the disclosure of the existence of the discussion regarding this transaction or terms thereof.

s) This Offer to Acquire Assets and the Formal Agreement and ancillary documents will be interpreted and enforced in accordance with the laws of the Province of Alberta and the federal laws of Canada applicable therein. This letter may be executed in any number of counterparts and all such counterparts taken together shall be deemed to constitute one same instrument, facsimile, electronic transmission or counterpart



Sincerely,

Waste to Energy Canada Inc.

Per: _____

Alistair Haughton,

President & Director

Waste to Energy Canada


Agreed to this ____ day of June 2011.

Per:

Waste2Energy Holdings, Inc.

Name:

Title: