# Exhibit P

# Lindsay Sheets

**From:** John Murphy [fulcrumjjm@gmail.com]
**Sent:** Tuesday, March 08, 2011 2:54 PM
**To:** alistair@wtecanada.com
**Cc:** Peter Bohan; Chris Taylor
**Subject:** W2E Lease Termination Obligations Greenville SC
**Attachments:** W2E_CH_Collection_Lttr_final.pdf; Waste 2 Energy Buyout 2-28-11(final).xlsb; W2E_Lease_CH.pdf

Alistair,

Fulcrum Properties, Inc., as the Owners Agent, submits the following Invoice to you for payment on behalf of W2E.

If you have any questions or need further clarification please contact me directly.

Best Regards,


Fulcrum Properties, Inc.
John J. Murphy II
President

O- 001-912-925-9442
C- 001-912-659-3320

Note:
This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any incorrect transmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies or it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print or copy any part of this message if you are not the intended recipient. Fulcrum Properties, Inc. and any of it's subsidiaries each reserve the right to monitor all e-mail communications through their networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender in authorised to state them to be the views of any such liability.

Before printing, think about the environment



**FULCRUM PROPERTIES, INC.**
10611 Abercorn Street
Savannah, Georgia 31419
Phone: 912-925-9442
Fax: 912-920-1060

Alistair Haughton
Waste to Energy Canada Inc.
2267 West 10th Avenue
Vancouver, BC
V6K 2J1
Via Fax- 1-604-737-7376

    RE: Chick Hampton Building Lease

Dear Mr. Haughton:

As the Owner's Agent for the Chick Hampton Building we have been requested to alert you to the existence of various claims owed to our clients by Waste2Energy Holdings Inc.

Waste2Energy is bound to the terms and conditions of a lease at the Chick Hampton Building and attached is the outstanding invoice for early termination of its obligation under the lease.

It is our understanding that Waste2Energy Holdings Inc. proposes to sell all of its assets to Waste to Energy Canada Inc. and WTEC is paying all of the obligations of W2E.

The Owner's claims include but are not limited to occupancy costs, common area costs, and early termination fees. Please advise us of when we will receive payment.

Should you have any questions feel free to contact me at (912) 659-3320.

OWNERS AGENT
FULCRUM PROPERTIES, INC.

By:_____
      John J. Murphy, President

# CHICK HAMPTON BUILDING

1 Chick Springs Road
Suite 214 D - Leasing Office
Greenville, SC  29609

# INVOICE

**DATE:**
February 28, 2011

**INVOICE #**
100159

**Bill To:**
Waste2Energy, Inc.
1 Chick Springs Road
Geenville, SC

**For:**
Lease Obligation Due

| DESCRIPTION | | AMOUNT |
|---|---|---:|
| March Rent | $ | 1,512.00 |
| 30 day written notice to vacate suite 218 | $ | 1,512.00 |
| Additional Deposit | $ | 3,653.50 |
| Base Rent Year 1 | $ | 36,240.00 |
| Base Rent Year 2 | $ | 37,320.00 |
| Base Rent Year 3 | $ | 38,436.00 |
| Architectural Design (Five Revisions) | $ | 1,370.00 |
| Transfer Costs Lucas | $ | 2,500.00 |
| CAM Contributions Year 1-3 | $ | 12,107.20 |
| Legal Costs | $ | 2,750.00 |
| Leasing Commissions | $ | 4,125.00 |
| TOTAL | $ | 141,525.70 |

Make all checks payable to Chick Hampton

**THANK YOU FOR YOUR BUSINESS!**

## FULCRUM PROPERTIES, INC.

## LEASE AGREEMENT

| | |
|---|---|
| **TENANT:** | Waste2Energy |
| **CONTACT INFO:** | Peter Bohan<br>President & CEO<br>Waste2Energy, Inc<br>1 Chick Springs Road<br>Suite 218<br>Greenville, SC, 29609<br>846-679-1625<br>pbohan@waste2energy.com |
| **SIGNING DATE:** | _____ |
| **COMMENCEMENT DATE:** | Upon Substantial Completion of the space estimated as February 1, 2009. The space will be retrofitted as outlined on the attached scope of Work attached as Exhibit "A" attached to the lease and incorporated therein. |
| **LEASEHOLD PREMISES:** | Suite 217 |
| **LANDLORD:** | FULCRUM PROPERTIES, INC., as exclusive agent for the Owner of the Building |
| **BUILDING:** | Chick Hampton to be renamed Greenville Energy Center |
| **ADDRESS FOR PAYMENT OF RENT AND SENDING NOTICES TO LANDLORD:** | 1 Chick Springs Road<br>Suite 214-D<br>Greenville, SC 29609 |
| **INITIAL TERM:** | Three years |
| **LEASE AREA:** | ~ 3,000 sq ft |
| **BASE MONTHLY RENT:** | Year 1- $ 3,020.00 per month plus pro-rata common area expenses;<br>Year 2- $ 3,110.00 per month plus pro rata common area expenses;<br>Year 3- $ 3,203.00 per month plus pro rata common area expenses. |
| **Common Area Contributions:** | Tenant shall pay its pro rata share of all building operating expenses including all costs associated with operating the building, taxes, insurance and management fees. It is estimated that the initial year shall be estimated at $8,702.40 per annum to be paid in advance on a monthly basis in the amount of $725.20 per month. |
| **PAYMENT TERMS:** | All monthly rent due by the 1st of each month. |
| **DEPOSIT:** | W2E shall pay a deposit in the amount of $3,653.50. |
| **RENEWAL OPTION:** | Leaseholder must notify owner of intent to vacate by July 31st, 2012. If either tenant or landlord gives no notice, this lease will renew at the current street rate. |
| **PAGE INITIALED BY:** | _____ Tenant<br>_____ Owners Agent |

THIS LEASE AGREEMENT is executed on the SIGNING DATE
Between the LANDLORD and the TENANT

1. **DEFINED TERMS**: The various phrases, words or terms on the first page of this LEASE AGREEMENT are to be construed in accordance with the definitions hereafter set forth.

2. **LEASEHOLD PREMISES:** The LANDLORD leases to the TENANT and the TENANT leases from the LANDLORD the LEASEHOLD PREMISES.

3. **TERM:** The INITIAL TERM starts on the COMMENCEMENT DATE. If the COMMENCEMENT DATE is other that the first day of a month, TENANT shall prepay an amount equal to the BASE MONTHLY RENT multiplied by the fractional part of the month remaining from the COMMENCEMENT DATE.

4. **RENT:** The rent for the first year of the INITIAL TERM shall be the BASE MONTHLY RENT times twelve. Rent shall be paid in advance on the first day of each successive month. TENANT shall also pay, at the same time, any sales, use or similar tax imposed on the rent. After the first year and for each successive year in which TENANT occupies the LEASED PREMISES, the rent shall be increased proportionate to the increase in the cost of living as indicated by the most recent "United States Bureau of Labor Statistics Consumer Price Index ("CPI") or such other equivalent index as replaces that standard.

5. **Common Area Contributions**: Tenant shall pay its pro rata share of all building operating expenses including all costs associated with operating the building, taxes, insurance and management fees. It is estimated that the initial year shall be estimated at $8,702.40 per annum to be paid in advance on a monthly basis in the amount of $725.20 per month.

6. **RENEWAL OPTIONS:** This lease will automatically renew at the end of the INITIAL TERM or any option term unless tenant exercises by written notice to LANDLORD of his intent to vacant not later than thirty (30) days prior to the expiration. Should the tenant not sign a renewal agreement but remains on month-to-month status, the rent will increase to market rent, plus $500.00 a month.

7. **TENANT TERMINATION:** A material consideration for entry into this lease agreement by Lessee is a pre-existing business relationship with Fulcrum Properties, Inc. and its officers. In the event that Fulcrum Properties, Inc. ceases to serve as management agent of the subject property, Lessee shall thereupon have the option to terminate this lease upon sixty days written notice and will pay three months as a termination fee.

8. **TYPED OR HANDWRITTEN PROVISIONS:** Typewritten or handwritten provisions inserted herein or attached, as addenda shall control over the printed provisions of this LEASE AGREEMENT.

9. **STANDARD PROVISIONS:** This Lease includes Standard Provisions of Lease, Paragraphs 1 through 24, and the Rules and Regulations of the BUILDING which have been attached.

IN WITNESS WHEREOF, this Lease Agreement has been executed by TENANT and LANDLORD on the aforesaid day and year.

Signed, sealed and delivered
In the presence of:

"LANDLORD"

FULCRUM PROPERTIES, INC. as Owners Agent

By: _____
Fulcrum Properties, Inc.

"TENANT"

By: _____

Waste2Energy, Inc.

## STANDARD PROVISIONS OF LEASE

## FULCRUM PROPERTIES, INC.

1. **LATE CHARGES:** Rent is due on the first of the month. A late charge of $100 will be charged on the 6th of month, the late fee increases to $200 on the 15th and to $500 on the 30th.

2. **INSURANCE AND INDEMNITY:**

    A. TENANT acknowledges that LANDLORD maintains property damage and public liability insurance on the building and that the coverages provided by such policy may not afford TENANT any protection against claims of liability and LANDLORD is not responsible for, and will not provide, fire or casualty insurance for TENANT's personal property. The LANDLORD may demand, if LANDLORD deems that it be advisable, that TENANT maintain public liability and property damage insurance in amounts not less than $100,000 per person and $300,000 per accident and $50,000 for property damage liability. Such policy shall name the LANDLORD and TENANT as insureds and contain a clause that the insuror will not cancel or change the insurance without first giving the LANDLORD ten (10) days' prior notice.

    B. TENANT agrees not to keep, use, sell or offer for sale any article that may be prohibited by the standard form of fire and extended coverage insurance. In the event that the TENANT has such prohibited article on the LEASED PREMISES, LANDLORD may charge tenant, as additional rent, an amount equal to the increase in insurance premium which may be charged during the term of this Lease on the BUILDING which results from such action of the TENANT, whether or not the LANDLORD has consented to such action.

3. **ASSIGNMENT AND SUBLETTING:** TENANT agrees not to sell, assign or in any manner transfer the TENANT's interest in this Lease without the previous written consent of the LANDLORD, which consent will not be unreasonably withheld. The effect of LANDLORD accepting a subtenant or assignee of TENANT will not release the TENANT from the remaining liability on this Lease or from the performance of any of its terms, covenants and conditions.

4. **SIGNS, FIXTURES, ALTERATIONS:**

    A. TENANT will not make any alterations, additions or improvements to the building without first obtaining the LANDLORD's written approval and consent. The consent of LANDLORD may be conditioned, in LANDLORD's discretion, upon submittal and acceptance of plans and specifications, renderings of the finished work, indemnity against liens, costs, and damages.

    B. The TENANT will only display such signage as has been approved in advance in writing by the LANDLORD, which consent will not be unreasonably withheld. In the event that TENANT installs any signage, fixture, canopy or the like which is visible from outside of the LEASED PREMISES, the TENANT agrees to maintain such things in good condition and repair at all times.

    C. In the event that alterations are required because of misuse of the facilities by the TENANT, such alterations or repairs shall be made at the expense of TENANT, subject to the further provisions of Paragraph A above.

    E. Prior to commencing any alterations, TENANT shall provide LANDLORD with all building permits that may be required for the issuance of a Certificate of Occupancy or approvals of the building or by the National Board of Fire Underwriters.

5. **SUBORDINATION AND ESTOPPEL CERTIFICATES:**

    A. TENANT acknowledges that this Lease is and will be subordinate to the lien of lenders who have loaned or will lend on the security of the BUILDING. This subordination shall be self-operative and no other instrument of subordination will be necessary to evidence the TENANT's agreement to subordination, provided such lenders shall have executed and delivered to TENANT a non-disturbance agreement in form and substance reasonably satisfactory to TENANT. Nonetheless, upon the request of the LANDLORD, the TENANT shall promptly execute an instrument evidencing the subordination of this Lease to the lien of such financing.

2

B. The TENANT will deliver, within ten (10) days after request by LANDLORD, estoppel certificates stating that this Lease is in force and effect and that there are no defenses to TENANT's obligation to pay rent (or stating such defenses which the TENANT claims), the rent payable in the next succeeding month, the term remaining on the Lease, and the like.

C. TENANT will indemnify LANDLORD and save it harmless from and against any and all claims, damages, liabilities or expenses in connection with any loss of life, personal injury and damage to property arising out of any occurrence related to the LEASED PREMISES or occasioned wholly or in part by any act or omission of TENANT, its agents, invitees, employees or the like. In the event that LANDLORD shall, without fault on its part, be made party to any litigation commenced by or against TENANT, then TENANT shall pay all costs, expenses and reasonable attorneys' fees incurred by the LANDLORD in connection with such litigation.

6. UTILITY SERVICES: The rent includes the furnishing of electric, heating and air conditioning services to the LEASEHOLD PREMISES. Telephone and cable services are the responsibility of the TENANT. In the event that TENANT requires extraordinary utility services, the LANDLORD shall surcharge the TENANT for such utilities an amount equal to its estimated cost plus five percent (5%) for billing and handling.

7. RELOCATION: If the area of the LEASEHOLD PREMISES is less than 2,000 square feet, LANDLORD reserves the right to relocate the TENANT within the building upon reasonable notice and with a minimum of disruption to the TENANT's business. All expenses of relocation will be borne by LANDLORD. If TENANT objects to such relocation, the TENANT shall have the option of canceling its lease and shall have a period of two (2) months in which to vacate the LEASED PREMISES. Until TENANT does vacate, rent shall continue unabated.

8. DEFAULT OF THE TENANT: In the event that the TENANT defaults in the faithful performance of this Lease, which defaults include:

A. Non-payment of rentals, as adjusted, or any other money amounts owed, and such non-payment is not cured within five (5) days of demand; or

B. The LEASED PREMISES are abandoned, deserted or vacated; or

C. TENANT shall fail to comply with a term, provision, or covenant of this Lease, or the TENANT shall violate any rules and regulations now or hereafter established for the operation of the BUILDING; or

D. Any petition is filed by or against the TENANT under any section or chapter of the Federal Bankruptcy Act as amended,

Then LANDLORD may declare this Lease in default. The LANDLORD shall have the right to accelerate the obligation of TENANT to pay all rent due for the remaining term of the Lease and shall collect all unpaid rent by distress or otherwise. LANDLORD may enter the LEASED PREMISES as agent of TENANT without being liable to any claim of damages. In the event that LANDLORD relets the LEASED PREMISES following default by the TENANT, notwithstanding an acceleration of the rent, TENANT shall continue to be liable for the accelerated rental amount and, following collection of such funds, LANDLORD agrees to remit, as received, sums received from such substitute tenant.

9. Intentionally left blank

10. AIR-CONDITIONING AND HEAT: LANDLORD agrees to provide both heating and cooling to the LEASED PREMISES such that the ambient temperature is within customary design standards of 10 degrees Fahrenheit for cooling and 15 degrees Fahrenheit for heating.

11. DEMOLITION OF BUILDING: In the event that the LANDLORD determines that it is appropriate to demolish the BUILDING, the LANDLORD reserves the right upon one hundred twenty (120) days' written notice to TENANT to cancel prematurely the remaining term of this Lease. Such premature termination shall only be for the purposes of demolition and LANDLORD shall cooperate with TENANT to allow the least disruption to TENANT's business before demolition commences.

12. LIEN RIGHTS: Nothing in this Lease shall give the TENANT the right to place any kind of lien against either the LEASED PREMISES or the BUILDING, including mechanic's liens or the like.

13. KEYS AND LOCKS: Upon expiration or termination of this Lease, TENANT shall deliver to LANDLORD all keys to the LEASED PREMISES and the BUILDING. In the event that TENANT changes locks or has locks

re-keyed, the TENANT shall deliver the LANDLORD copies of all new keys so that the LANDLORD may have adequate access to the LEASED PREMISES for cleaning, inspection, repair and maintenance. The TENANT agrees that the LANDLORD shall have the right to access to the LEASED PREMISES at all times for inspection and to allow the LANDLORD to otherwise discharge its duties to the TENANT.

14. ABANDONMENT: If the TENANT vacates the LEASED PREMISES for any period during which rent has not been paid, and the LEASED PREMISES remain vacant for thirty (30) business days, such circumstances will be deemed to be an abandonment by the TENANT and the LANDLORD authorized to take possession of the LEASED PREMISES and any personalty which is located on the LEASED PREMISES shall serve as security for the payment of unpaid rent. The LANDLORD may dispose of any such security at either private or public sale and apply the proceeds to unpaid rent or any obligations due by the TENANT to the LANDLORD under this Lease. Any excess funds will be sent to the TENANT at its last known address.

15. PARKING: The LANDLORD reserves the right to designate parking spaces for the used of TENANT and to reserve spaces for the use of other TENANTS or business invitees of the BUILDING. TENANT agrees to cooperate in using designated parking spaces. Any vehicles parked at the BUILDING must be kept in good operating condition and any vehicle which is left parked at the BUILDING for a period of more than seventy-two (72) hours may be towed and stored off-site, the expenses of which will be borne by the owner of the vehicle.

16. RULES AND REGULATIONS: In order to assure the maximum enjoyment of the BUILDING by all tenants, the LANDLORD reserves the right to publish, from time to time, additional rules and regulations which govern conduct of the tenants at the BUILDING. Such rules and regulations shall have the binding effect as if set out in this Lease.

17. EQUIPMENT: The TENANT certifies to the LANDLORD that the only equipment which will be used on the LEASED PREMISES consists of usual and customary office equipment. In the event that the TENANT puts equipment on the LEASED PREMISES which requires extraordinary utility services such as mainframe computers, processing machinery or the like which requires utility services in excess of the usual and customary utility services, then the TENANT will be responsible for the reasonable charges of such increased utility services at the LANDLORD's cost plus an amount of five percent (5%) for billing and handling. The amount of such extraordinary utility charges to the TENANT shall be due upon presentation of a bill by the LANDLORD and will be deemed to be additional rent due from the TENANT.

18. FORCE MAJEURE: Neither LANDLORD nor TENANT shall be deemed in violation of this Lease if it is prevented from performing any of the obligations hereunder by reason of strikes, boycotts, labor disputes, embargoes, shortages of material, acts of God, acts of the public enemy, acts of superior governmental authority, weather conditions, flood, riots, rebellion, sabotage, or any other circumstances for which it is not responsible or which is not in its control, and the time for performance shall be automatically extended by the period the party is prevented from performing its obligations hereunder.

19. NOTICES: Any notice required or permitted under this Lease shall be deemed sufficiently given if and served personally or by certified mail at the address shown for notices to LANDLORD and TENANT in the Lease or at such other address as the TENANT shall designate by written notice to the LANDLORD.

20. WAIVER: In the event that LANDLORD forgives the performance of any term of this Lease, such forgiveness shall not be deemed to be a waiver of any subsequent breach of this Lease.

21. MISCELLANEOUS:

A. This Lease may be recorded in the Public Records.

B. In the event of any litigation between the LANDLORD and TENANT, the TENANT agrees to pay the LANDLORD all of the costs incurred including a reasonable attorney's fee for all proceedings related to such litigation.

C. The construction of this Lease shall be governed by the laws of the state of South Carolina.

D. This Lease constitutes the full agreement of the LANDLORD and TENANT. No amendments, modifications or alterations to the terms expressed in this Lease shall be binding unless in a subsequent written instrument, which is executed, by both the LANDLORD and the TENANT.

E. The submission of this Lease for examination does not create a reservation or option. This Lease becomes effective only upon execution and delivery by both LANDLORD and TENANT.

F. No agreement to accept a surrender of the LEASED PREMISES will be valid unless in an instrument in writing signed by the LANDLORD. The delivery of keys to an agent or employee of the LANDLORD will not operate as a termination of the Lease or a surrender of the LEASED PREMISES.

22. SPECIAL PROVISIONS: Any special provisions of this Lease shall be attached as Addenda to this Lease.

\* \* \* \* \* \* END OF STANDARD PROVISIONS OF LEASE \* \* \* \* \* \*

_____ 11/5/09
Tenant Signature         Date

_____ 11/05/09
Owner's Agent Signature  Date

## BUILDING RULES AND REGULATIONS

1. Curtains, draperies or other window coverings shall not be installed without first obtaining written approval of LANDLORD as to the color and material of the exterior lining to be used.

2. No food shall be prepared or cooked in the Building and the Leasehold Premises shall not be used for housing, lodging, sleeping or for any immoral or illegal purpose. Nothing contained in this clause, however, shall be construed to prohibit TENANT's operation of coffee lounge facilities.

3. TENANT shall not connect any apparatus, equipment or device to the water lines in the Building without first obtaining the written consent of LANDLORD.

4. TENANT shall not bring or permit to be brought into the Building any animals.

5. TENANT shall not disturb, solicit or canvas any occupant of the Building and shall cooperate to prevent the same.

6. TENANT shall not use any illumination or power for the operation of any equipment or device other than electricity, which shall be provided by LANDLORD.

7. TENANT will refer all contractors or installation technicians rendering any service for TENANT to LANDLORD for supervision and approval before performance of any installation of telephones, telegraph equipment, electrical devices and attachments, and installations of any and every nature affecting floors, walls, woodwork, trim, windows, ceilings, equipment or other physical portions or services of the Building.

8. The work of the janitor or cleaning personnel shall not be hindered by TENANT after 5:30 p.m. The windows may be cleaned at any time. TENANT shall provide adequate waste and rubbish receptacles to prevent unreasonable hardship to LANDLORD in discharging its obligation regarding cleaning services.

9. Movement in or out of the Building of furniture or office equipment, or dispatch or receipt by TENANT of and merchandise or materials other than hand-delivered packages which requires the use of elevators or stairways or movement through the Building entrances or lobby, shall be restricted to the hours designated by LANDLORD from time to time. All such movement shall be as directed by LANDLORD and in a manner to be agreed upon between TENANT and LANDLORD by prearrangement before performance. TENANT assumes all risk of damage to any and all articles so moved as well as injury to any person or property in such movement, and hereby agrees to indemnify LANDLORD against any loss resulting therefrom.

10. LANDLORD shall not be responsible for any lost or stolen property, equipment, money or jewelry from the LEASEHOLD PREMISES or the public areas of the Building regardless of whether such loss occurs when the LEASEHOLD PREMISES are locked or not.

11. LANDLORD shall have the right to determine and prescribe the maximum weight and proper position of any heavy equipment, including safes or large files that are to be placed in the Building, and only those which, in the reasonable opinion of LANDLORD, will not do damage to the floors, structures or elevators may be moved into the Building.

12. Any damage occasioned in connection with the moving or installing of furniture, equipment, appliances or other articles in the Building, or TENANT shall pay for the existence of it in the Building.

13. TENANT shall not place on or about its entrance door or doors any signage other than that approved by LANDLORD. See Exhibit A.

14. LANDLORD may permit entrance to TENANT's premises by use of passkeys controlled by LANDLORD or its employees, contractors or service personnel for the purpose of performing LANDLORD's janitorial services.

15. TENANT, nor any of its employees, will not leave any exterior door unlocked after business hours.

16. TENANT shall instruct its employees to turn off all lights and equipment using electricity when not in use, and in no event will any of these items be left on after normal business hours. TENANT will comply with all instructions with reference to Energy Conservation as provided by federal or state law.

Page Initialed by: _____ - _____ TENANT     _____ Owners Agent