# EXHIBIT A



# ENVIRONMENTAL

### ENVIRONMENTAL, CIVIL AND BUILDING CONTRACTORS

Ascot House 51 Water Street Radcliffe Manchester M26 3DE tel 0161 724 1999 fax 0161 724 1998
email info@ascotenv.co.uk www.ascotenvironmental.co.uk

John Murphy
President and CEO
Waste to Energy Holdings Inc

26th August 2011

<u>Via E-mail</u>

Dear John,

**RE: ASCOT/W2E CURRENT STATUS**

On behalf of Ascot Environmental Limited I would like to notify you of new concerns about the viability of your Company and performance in light of recent Chapter 11 notices.

<u>History</u>

Ascot and W2E worked under difficult conditions throughout the Scotgen contract mainly due to lack of funds and resources available to W2E. Under these circumstances we worked together under your contract up to August 2009; We had our differences and these are documented but generally we sought to resolve these issues.

Towards the end of last year Peter Bohan assured ourselves initially regarding QSTV and then early in the new year regarding WTEC that things would change, investment would be made and the project at Dargavel completed to an agreed timetable and schedule. Needless to say none of these assurances were carried out and during this period introductions made to WTEC (Alistair Haughton and David Hanagraph) we allowed visits which have turned out to be nothing more than a tactic to undermine the Ascot business and introduce UK based customers in order to promote themselves providing no assistance to Ascot along the way. They in fact developed competitive relationships and businesses through Sterling Engineering which has harmed our UK business and undermined any trust we would have with this relationship going forward as we now deem them competition who are trying to exploit Ascot's investment by purporting to have had an input into Dargavel. We have had to threaten legal action for them to remove Youtube/website links.

After the above episode you were reinstated as CEO and bridges built. We have witnessed some real progress in trying to get things resolved and at last are building a trust relationship. We have had the plans explained and been introduced to the Chinese manufacturer and at last seen something tangible start to develop, then the Chapter II – we now seem to be going backwards. We have been promised and documentation placed in the 8k funding to assist the completion of the project to the benefit of both parties but again W2E have defaulted apparently because the Chinese are nervous owing to the



**Southern Office:** Astra House Christy Way Southfields Basildon Essex SS15 6TQ tel 01268 540480 fax 01268 540850
**Directors:** Jim Hennessey Managing Dave Quarmby Secretary **Regional Directors:** Mark Harvey Southern
Paul Sanderson Northern Peter Jones Central Peter Warters Marketing & Development

Registered in England No 03716462

     

impending US Bankruptcy Court, this is in turn is affecting the Sita/Suez perception of the business as a whole.

Ascot has no confidence or inclination to work with any of the past players as we can't believe any representations. More hollow promises are just not acceptable. Our goal is to finish our facility and commence operations which we will do with or without W2E however we will not waive any of your obligations and will pursue all remedies. We have always maintained the position that we were agnostic with who at W2E completed the obligations under the contract however at this point we are skeptical and would ask that you provide us reassurance that the funding will continue as indicated and you will actively fulfill your obligations under our agreements.

John, in closing, Ascot wishes you the best luck in resolving the internal struggles facing W2E. We are supportive of your Chinese relationships and a ready to continue provided we can quickly get back on track.

Yours sincerely

Jim S Hennessey
Managing Director

Cc file

# EXHIBIT B

DocuSign Envelope ID: ACF5043F-D206-42FB-BBF8-B31AE68535AB



## THREE-PARTY ESCROW SERVICE AGREEMENT

### 1. Introduction.

This Three Party Escrow Service Agreement (the "**Agreement**") is entered into by and between Waste2Energy Technology International Limited, a business entity organized and existing under the laws of the Isle of Man (the "**Depositor**"), and by WTE Waste to Energy Canada, Inc., a business entity organized and existing under the laws of British Columbia, Canada (the "**Beneficiary**") and by Iron Mountain Intellectual Property Management, Inc., a Delaware corporation ("**Iron Mountain**"). Depositor, Beneficiary, and Iron Mountain may be referred to individually as a "Party" or collectively as the "Parties" throughout this Agreement.

(a) The use of the term services in this Agreement shall refer to Iron Mountain services that facilitate the creation, management, and enforcement of software or other technology escrow accounts as described in Exhibit A attached hereto ("**Services**"). A Party shall request Services under this Agreement by submitting a work request for certain Iron Mountain Services ("**Work Request**") via written instruction or the online portal maintained at the website located at www.ironmountainconnect.com, or other websites owned or controlled by Iron Mountain that are linked to that website (collectively the "**Iron Mountain Website**").

(b) The Beneficiary and Depositor have, or will have, entered into a certain License Agreement by and between Depositor and Beneficiary dated as of [ _11/9/10_ ], as amended by that certain Amendment No. 1 to License Agreement dated as of [September 9, 2010], as may be further amended from time to time ("**License Agreement**") conveying intellectual property rights to the Beneficiary.

(c) All capitalized terms used herein or in any exhibit hereto shall have the meaning given to them in the License Agreement unless otherwise defined herein.

### 2. Depositor Responsibilities and Representations.

(a) Depositor shall make an initial deposit that is complete and functional, as applicable, of all proprietary technology and other materials covered under this Agreement ("**Deposit Material**") to Iron Mountain within ten (10) days of the Effective Date. At the time of each deposit or update, Depositor will provide an accurate and complete description of all Deposit Material sent to Iron Mountain using the form attached hereto as Exhibit B.

(b) Depositor will deposit: (a) on the Effective Date the Source Code Documentation for the Licensed Products; (b) on the Effective Date the Design Specifications, technical drawings, specifications, Know-How to the extent reproducible, control codes and any other Documentation related to the Licenses Products; and (c) within thirty (30) days of being made available to any of the Licensor's Affiliates, End Users or licensees, any Enhancements for the Licensed Software for the Licensed Products which are licensed to Licensee pursuant to the License Agreement and any updates to that Documentation referred to under section 7.5(a) and (b) of the License Agreement; including without limitation, any updates from time to time, necessary to build, operate, support and enhance the Licensed Products and the Licensed Software contained therein.

(c) Depositor represents that it lawfully possesses all Deposit Material provided to Iron Mountain under this Agreement and that any current or future Deposit Material liens or encumbrances will not prohibit, limit, or alter the rights and obligations of Iron Mountain under this Agreement. Depositor warrants that with respect to the Deposit Material, Iron Mountain's proper administration of this Agreement will not violate the rights of any third parties.

(d) Depositor represents that all Deposit Material is readable and useable in its then current form; if any portion of such Deposit Material is encrypted, the necessary decryption tools and keys to read such material are deposited contemporaneously.

(e) Depositor agrees, upon request by Iron Mountain, in support of Beneficiary's request for verification Services, to promptly complete and return the Escrow Deposit Questionnaire attached hereto as Exhibit Q. Depositor consents to Iron Mountain's performance of any level(s) of verification Services described in Exhibit A attached hereto and Depositor further consents to Iron Mountain's use of a subcontractor to perform verification Services. Any such subcontractor shall be bound by the same confidentiality obligations as Iron Mountain and shall not be a direct competitor to either Depositor or Beneficiary. Iron Mountain shall be responsible for the delivery of Services of any such subcontractor as if Iron Mountain had performed the Services. Depositor represents that all Deposit Material is provided with all rights necessary for Iron Mountain to verify such proprietary technology and materials upon receipt of a Work Request for such Services or agrees to use commercially reasonable efforts to provide Iron Mountain with any necessary use rights or permissions to use materials necessary to perform verification of the Deposit Material. Depositor agrees to reasonably cooperate with Iron

Mountain by providing reasonable access to its technical personnel for verification Services whenever reasonably necessary.

3. **Beneficiary Responsibilities and Representations.**

    (a) Beneficiary acknowledges that, as between Iron Mountain and Beneficiary, Iron Mountain's obligation is to maintain the Deposit Material as delivered by the Depositor and that, other than Iron Mountain's inspection of the Deposit Material (as described in Section 4) and the performance of any of the optional verification Services listed in Exhibit A, Iron Mountain has no other obligation regarding the completeness, accuracy, or functionality of the Deposit Material.

    (b) Verification of Escrow Material

        (i) The Beneficiary shall be entitled, as often as the Beneficiary deems necessary and at the Beneficiary's sole expense, to request Iron Mountain to verify that the Deposit Materials or any replacement Deposit Materials in the possession of the escrow agent:

            (1) are complete;

            (2) accurately reflect the most current version of the Licensed Products and the Licensed Software currently used by the Licensee;

            (3) incorporate all changes made to the Licensed Products and the Licensed Software or the Source Code from the previous time the Deposit Materials were delivered to the escrow agent under this Agreement; and

            (4) contain no passwords or other devices that would prevent or prohibit the use of the Deposit Materials at any time; and

        (ii) Iron Mountain shall make those verifications at such date, time, and location as agreed between the Beneficiary and Iron Mountain. The Depositor is entitled to receive notice from the Beneficiary of that date, time, and location at least eight (8) business days prior to that date and to be present while those verifications are being made. Depositor's presence at a verification will be considered a custom verification. Iron Mountain will require five (5) business days notice in order to prepare a custom Statement of Work which will set the terms and conditions under which Depositor or Depositor representative will be allowed onto Iron Mountain premises to observe the verification process at Depositor's expense.

    (c) Beneficiary may submit a verification Work Request to Iron Mountain for one or more of the Services defined in Exhibit A attached hereto and consents to Iron Mountain's use of a subcontractor if needed to provide such Services. Beneficiary warrants that Iron Mountain's use of any materials supplied by Beneficiary to perform the verification Services described in Exhibit A is lawful and does not violate the rights of any third parties.

    (d) In the event the verification of the Deposit Material determines that the Depositor has failed to comply with section 2(d) above in that the Deposit Material is not readable or usable in its then current form, or is otherwise encrypted and the necessary decryption tools and keys to read such material have not been deposited with the Deposit Material hereunder, then the cost of performing such verification Services as listed in Exhibit A hereof, shall be borne entirely by the Depositor and the Depositor agrees to reimburse the Beneficiary for same.

4. **Iron Mountain Responsibilities and Representations.**

    (a) Iron Mountain agrees to use commercially reasonable efforts to provide the Services requested by Authorized Person(s) (as identified in the "Authorized Person(s)/Notices Table" below) representing the Depositor or Beneficiary in a Work Request. Iron Mountain may reject a Work Request (in whole or in part) that does not contain all required information at any time upon notification to the Party originating the Work Request.

    (b) Iron Mountain will conduct a visual inspection upon receipt of any Deposit Material and associated Exhibit B. If Iron Mountain determines that the Deposit Material does not match the description provided by Depositor represented in Exhibit B, Iron Mountain will notify Depositor of such discrepancy.

    (c) Iron Mountain will provide notice to the Beneficiary of all Deposit Material that is accepted and deposited into the escrow account under this Agreement.

    (d) Iron Mountain will follow the provisions of Exhibit C attached hereto in administering the release of Deposit Material.

    (e) Iron Mountain will work with a Party who submits any verification Work Request for Deposit Material covered under this Agreement to either fulfill any standard verification Services Work Request or develop a custom Statement of Work ("SOW"). Iron Mountain and the requesting Party will mutually agree in writing to an SOW on terms and conditions that include but are not limited to: description of Deposit Material to be tested; description of verification testing; requesting Party responsibilities; Iron Mountain responsibilities; Service Fees; invoice payment instructions; designation of the paying Party; designation of authorized SOW representatives for both the requesting Party and Iron Mountain with name and contact information; and description of any final deliverables prior to the start of any fulfillment activity. After the start of fulfillment activity, each SOW may only be amended or modified in writing with the mutual agreement of both Parties, in accordance with the change control procedures set forth therein. If the verification Services extend beyond those described in Exhibit A, the Depositor shall be a necessary Party to the SOW governing the Services.

    (f) Iron Mountain will hold and protect Deposit Material in physical or electronic vaults that are either owned or under the control of Iron Mountain, unless otherwise agreed to by all the Parties.

DocuSign Envelope ID: ACF5043F-D206-42FB-BBF8-B31AE68535AB

(g) Upon receipt of written instructions by both Depositor and Beneficiary, Iron Mountain will permit the replacement or removal of previously submitted Deposit Material. The Party making such request shall be responsible for getting the other Party to approve the joint instructions. Any Deposit Material that is removed from the deposit account will be either returned to Depositor or destroyed in accordance with Depositor's written instructions.

(h) Should transport of Deposit Material be necessary in order for Iron Mountain to perform Services requested by Depositor or Beneficiary under this Agreement, Iron Mountain will use a commercially recognized overnight carrier such as Federal Express or United Parcel Service. Iron Mountain will not be responsible for any loss or destruction of, or damage to, such Deposit Material while in the custody of the common carrier.

## 5. Payment.

The Party responsible for payment designated in Exhibit A ("**Paying Party**") shall pay to Iron Mountain all fees as set forth in the Work Request ("**Service Fees**"). Except as set forth below, all Service Fees are due within thirty (30) calendar days from the date of invoice in U.S. currency and are non-refundable. Iron Mountain may update Service Fees with a ninety (90) calendar day written notice to the Paying Party during the Term of this Agreement (as defined below). The Paying Party is liable for any taxes (other than Iron Mountain income taxes) related specifically to Services purchased under this Agreement or shall present to Iron Mountain an exemption certificate acceptable to the taxing authorities. Applicable taxes shall be billed as a separate item on the invoice. Any Service Fees not collected by Iron Mountain when due shall bear interest until paid at a rate of one percent (1%) per month (12% per annum) or the maximum rate permitted by law, whichever is less. Notwithstanding the non-performance of any obligations of Depositor to deliver Deposit Material under the License Agreement or this Agreement, Iron Mountain is entitled to be paid all Service Fees that accrue during the Term of this Agreement.

## 6. Term and Termination.

(a) The term of this Agreement is for a period of one (1) year from the Effective Date ("**Initial Term**") and will automatically renew for additional one (1) year terms ("**Renewal Term**") (collectively the "**Term**"). This Agreement shall continue in full force and effect until one of the following events occur: (i) Depositor and Beneficiary provide Iron Mountain with sixty (60) days' prior written joint notice of their intent to terminate this Agreement; (ii) Beneficiary provides Iron Mountain and Depositor with sixty (60) days' prior written notice of its intent to terminate this Agreement; (iii) the Agreement terminates under another provision of this Agreement; or (iv) any time after the Initial Term, Iron Mountain provides sixty (60) days' prior written notice to the Depositor and Beneficiary of Iron Mountain's intent to terminate this Agreement. If the Effective Date is not specified above, then the last date noted on the signature blocks of this Agreement shall be the Effective Date.

(b) Unless the express terms of this Agreement provide otherwise, upon termination of this Agreement, Iron Mountain shall return the Deposit Material to the Depositor. Unless otherwise directed by Depositor, Iron Mountain will use a commercially recognized overnight common carrier such as Federal Express or United Parcel Service to return the Deposit Material to the Depositor. Iron Mountain will not be responsible for any loss or destruction of, or damage to, such Deposit Material while in the custody of the common carrier. If reasonable attempts to return the Deposit Material to Depositor are unsuccessful, Iron Mountain shall destroy the Deposit Material.

(c) In the event of the nonpayment of undisputed Service Fees owed to Iron Mountain, Iron Mountain shall provide all Parties to this Agreement with written notice of Iron Mountain's intent to terminate this Agreement. Any Party to this Agreement shall have the right to make the payment to Iron Mountain to cure the default. If the past due payment is not received in full by Iron Mountain within thirty (30) calendar days of the date of such written notice, then Iron Mountain shall have the right to terminate this Agreement at any time thereafter by sending written notice to all Parties. Iron Mountain shall have no obligation to perform the Services under this Agreement (except those obligations that survive termination of this Agreement, which includes the confidentiality obligations in Section 9) so long as any undisputed Service Fees due Iron Mountain under this Agreement remain unpaid.

## 7. Infringement Indemnification.

Anything in this Agreement to the contrary notwithstanding, Depositor at its own expense shall defend and hold Iron Mountain fully harmless against any claim or action asserted against Iron Mountain (specifically including costs and reasonable attorneys' fees associated with any such claim or action) to the extent such claim or action is based on an assertion that Iron Mountain's proper administration of this Agreement infringes any patent, copyright, license or other proprietary right of any third party. When Iron Mountain has notice of a claim or action, it shall promptly notify Depositor in writing. At its option, Depositor may elect to control the defense of such claim or action and may elect to enter into a settlement agreement, provided that no such settlement or defense shall include any admission or implication of wrongdoing on the part of Iron Mountain without Iron Mountain's prior written consent, which consent shall not be unreasonably delayed or withheld. Iron Mountain shall have the right to employ separate counsel and participate in the defense of any claim at its own expense.

## 8. Warranties.

(a) IRON MOUNTAIN WARRANTS ANY AND ALL SERVICES PROVIDED HEREUNDER SHALL BE PERFORMED IN A WORKMANLIKE MANNER CONSISTENT WITH THE MEASURES IRON MOUNTAIN TAKES TO PROTECT ITS OWN INFORMATION OF A SIMILAR NATURE, BUT IN NO CASE LESS THAN A REASONABLE LEVEL OF CARE. EXCEPT AS SPECIFIED IN THIS SECTION, ALL CONDITIONS, REPRESENTATIONS, AND

WARRANTIES INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SATISFACTORY QUALITY, OR ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE, ARE HEREBY EXCLUDED TO THE EXTENT ALLOWED BY APPLICABLE LAW. AN AGGRIEVED PARTY MUST NOTIFY IRON MOUNTAIN PROMPTLY UPON LEARNING OF ANY CLAIMED BREACH OF ANY WARRANTY AND, TO THE EXTENT ALLOWED BY APPLICABLE LAW, SUCH PARTY'S REMEDY FOR BREACH OF THIS WARRANTY SHALL BE SUBJECT TO THE LIMITATION OF LIABILITY AND CONSEQUENTIAL DAMAGES WAIVER IN THIS AGREEMENT. THIS DISCLAIMER AND EXCLUSION SHALL APPLY EVEN IF THE EXPRESS WARRANTY AND LIMITED REMEDY SET FORTH ABOVE FAILS OF ITS ESSENTIAL PURPOSE.

(b) Depositor warrants that all Depositor information provided hereunder is accurate and reliable and undertakes to promptly correct and update such Depositor information during the Term of this Agreement.

(c) Beneficiary warrants that all Beneficiary information provided hereunder is accurate and reliable and undertakes to promptly correct and update such Beneficiary information during the Term of this Agreement.

9. **Confidential Information.**

Iron Mountain shall have the obligation to implement and maintain safeguards designed to protect the confidentiality of the Deposit Material. Except as provided in this Agreement Iron Mountain shall not use or disclose the Deposit Material. Iron Mountain shall not disclose the terms of this Agreement to any third party other than its financial, technical or legal advisors, or its administrative support service providers. Any such third party shall be bound by the same confidentiality obligations as Iron Mountain. If Iron Mountain receives a subpoena or any other order from a court or other judicial tribunal pertaining to the disclosure or release of the Deposit Material, Iron Mountain will promptly notify the Parties to this Agreement unless prohibited by law. After notifying the Parties, Iron Mountain may comply in good faith with such order. It shall be the responsibility of Depositor or Beneficiary to challenge any such order; provided, however, that Iron Mountain does not waive its rights to present its position with respect to any such order. Iron Mountain will cooperate with the Depositor or Beneficiary, as applicable, to support efforts to quash or limit any subpoena, at such Party's expense. Any Party requesting additional assistance shall pay Iron Mountain's standard charges or as quoted upon submission of a detailed request.

10. **Limitation of Liability.**

EXCEPT FOR: (I) LIABILITY FOR DEATH OR BODILY INJURY; (II) PROVEN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; OR (III) THE INFRINGEMENT INDEMNIFICATION OBLIGATIONS OF SECTION 7, ALL OTHER LIABILITY RELATED TO THIS AGREEMENT, IF ANY, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, OF ANY PARTY TO THIS AGREEMENT SHALL BE LIMITED TO THE AMOUNT EQUAL TO ONE YEAR OF FEES PAID TO IRON MOUNTAIN UNDER THIS AGREEMENT. IF CLAIM OR LOSS IS MADE IN RELATION TO A SPECIFIC DEPOSIT OR DEPOSITS, SUCH LIABILITY SHALL BE LIMITED TO THE FEES RELATED SPECIFICALLY TO SUCH DEPOSITS.

11. **Consequential Damages Waiver.**

IN NO EVENT SHALL ANY PARTY TO THIS AGREEMENT BE LIABLE TO ANOTHER PARTY FOR ANY INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, LOST PROFITS, ANY COSTS OR EXPENSES FOR THE PROCUREMENT OF SUBSTITUTE SERVICES (EXCLUDING SUBSTITUTE ESCROW SERVICES), OR ANY OTHER INDIRECT DAMAGES, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE EVEN IF THE POSSIBILITY THEREOF MAY BE KNOWN IN ADVANCE TO ONE OR MORE PARTIES.

12. **General.**

(a) <u>Incorporation of Work Requests</u>. All valid Depositor and Beneficiary Work Requests are incorporated into this Agreement.

(b) <u>Purchase Orders</u>. In the event that the Paying Party issues a purchase order or other instrument used to pay Service Fees to Iron Mountain, any terms and conditions set forth in the purchase order which constitute terms and conditions which are in addition to those set forth in this Agreement or which establish conflicting terms and conditions to those set forth in this Agreement are expressly rejected by Iron Mountain.

(c) <u>Right to Make Copies</u>. Iron Mountain shall have the right to make copies of all Deposit Material as reasonably necessary to perform the Services. Iron Mountain shall copy all copyright, nondisclosure, and other proprietary notices and titles contained on Deposit Material onto any copies made by Iron Mountain. Any copying expenses incurred by Iron Mountain as a result of a Work Request to copy will be borne by the Party requesting the copies. Iron Mountain may request Depositor's reasonable cooperation in promptly copying Deposit Material in order for Iron Mountain to perform this Agreement.

(d) <u>Choice of Law</u>. The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the Commonwealth of Massachusetts, USA, as if performed wholly within the state and without giving effect to the principles of conflicts of laws.

(e) <u>Authorized Person(s)</u>. Depositor and Beneficiary must each authorize and designate one person whose actions will legally bind such Party ("Authorized Person" who shall be identified in the Authorized Person(s) Notices Table of this Agreement or such Party's legal representative) and who may manage the Iron Mountain escrow account through the Iron Mountain

DocuSign Envelope ID: ACF5043F-D206-42FB-BBF8-B31AE68535AB

website or written instruction. The Authorized Person for each the Depositor and Beneficiary will maintain the accuracy of their name and contact information provided to Iron Mountain during the Term of this Agreement.

(f) Right to Rely on Instructions. With respect to release of Deposit Material or the destruction of Deposit Material, Iron Mountain shall rely on instructions from a Party's Authorized Person(s). In all other cases, Iron Mountain may act in reliance upon any instruction, instrument, or signature reasonably believed by Iron Mountain to be genuine and from an Authorized Person(s), officer, or other employee of a Party. Iron Mountain may assume that such representative of a Party to this Agreement who gives any written notice, request, or instruction has the authority to do so. Iron Mountain will not be required to inquire into the truth of, or evaluate the merit of, any statement or representation contained in any notice or document reasonably believed to be from such representative.

(g) Force Majeure. No Party shall be liable for any delay or failure in performance due to events outside the defaulting Party's reasonable control, including without limitation acts of God, earthquake, labor disputes, shortages of supplies, riots, war, acts of terrorism, fire, epidemics, or delays of common carriers or other circumstances beyond its reasonable control. The obligations and rights of the excused Party shall be extended on a day-to-day basis for the time period equal to the period of the excusable delay.

(h) Notices. All notices regarding Exhibit C (Release of Deposit Material) shall be sent by commercial express mail or other commercially appropriate means that provide prompt delivery and require proof of delivery. All other correspondence, including invoices, payments, and other documents and communications, may be sent electronically or via regular mail. The Parties shall have the right to rely on the last known address of the other Parties. Any correctly addressed notice to the last known address of the other Parties that is relied on herein, that is refused, unclaimed, or undeliverable shall be deemed effective as of the first date that said notice was refused, unclaimed, or deemed undeliverable by electronic mail, the postal authorities, or through messenger or commercial express delivery service.

(i) No Waiver. No waiver of any right under this Agreement by any Party shall constitute a subsequent waiver of that or any other right under this Agreement.

(j) Assignment. No assignment of this Agreement by Depositor or Beneficiary or any rights or obligations of Depositor or Beneficiary under this Agreement is permitted without the written consent of Iron Mountain, which shall not be unreasonably withheld or delayed. Iron Mountain shall have no obligation in performing this Agreement to recognize any successor or assign of Depositor or Beneficiary unless Iron Mountain receives clear, authoritative and conclusive written evidence of the change of Parties.

(k) Severability. In the event any of the terms of this Agreement become or are declared to be illegal or otherwise unenforceable by any court of competent jurisdiction, such term(s) shall be null and void and shall be deemed deleted from this Agreement. All remaining terms of this Agreement shall remain in full force and effect. If this paragraph becomes applicable and, as a result, the value of this Agreement is materially impaired for any Party, as determined by such Party in its sole discretion, then the affected Party may terminate this Agreement by written notice to the other Parties.

(l) Independent Contractor Relationship. Depositor and Beneficiary understand, acknowledge, and agree that Iron Mountain's relationship with Depositor and Beneficiary will be that of an independent contractor and that nothing in this Agreement is intended to or should be construed to create a partnership, joint venture, or employment relationship.

(m) Attorneys' Fees. Any costs and fees incurred by Iron Mountain in the performance of obligations imposed upon Iron Mountain solely by virtue of its role as escrow service provider including, without limitation, compliance with subpoenas, court orders, and discovery requests shall, unless adjudged otherwise, be divided equally and paid by Depositor and Beneficiary. In any suit or proceeding between the Parties relating to this Agreement, the prevailing Party will have the right to recover from the other(s) its costs and reasonable fees and expenses of attorneys, accountants, and other professionals incurred in connection with the suit or proceeding, including costs, fees and expenses upon appeal, separately from and in addition to any other amount included in such judgment. This provision is intended to be severable from the other provisions of this Agreement, and shall survive and not be merged into any such judgment.

(n) No Agency. No Party has the right or authority to, and shall not, assume or create any obligation of any nature whatsoever on behalf of the other Parties or bind the other Parties in any respect whatsoever.

(o) Disputes. Any dispute, difference or question relating to or arising among any of the Parties concerning the construction, meaning, effect or implementation of this Agreement or the rights or obligations of any Party hereof will be submitted to, and settled by arbitration by a single arbitrator chosen by the corresponding Regional Office of the American Arbitration Association in accordance with the Commercial Rules of the American Arbitration Association. The Parties shall submit briefs of no more than 10 pages and the arbitration hearing shall be limited to two (2) days maximum. The arbitrator shall apply Massachusetts law. Unless otherwise agreed by the Parties, arbitration will take place in Boston, Massachusetts, U.S.A. Any court having jurisdiction over the matter may enter judgment on the award of the arbitrator. Service of a petition to confirm the arbitration award may be made by regular mail or by commercial express mail, to the attorney for the Party or, if unrepresented, to the Party at the last known business address. If however, Depositor or Beneficiary refuse to submit to arbitration, the matter shall not be submitted to arbitration and Iron Mountain may submit the matter to any court of competent jurisdiction for an interpleader or similar action.

(p) Regulations. Depositor and Beneficiary are responsible for and warrant, to the extent of their individual actions or omissions, compliance with all applicable laws, rules and regulations, including but not limited to: customs laws; import; export and re-export laws; and government regulations of any country from or to which the Deposit Material may be

DocuSign Envelope ID: ACF5043F-D206-42FB-BBF8-B31AE68535AB

delivered in accordance with the provisions of this Agreement. With respect to Deposit Material containing personal information and data, Depositor agrees to (i) procure all necessary consents in relation to personal information and data; and (ii) otherwise comply with all applicable privacy and data protection laws as they relate to the subject matter of this Agreement. Notwithstanding anything in this Agreement to the contrary, if an applicable law or regulation exists or should be enacted which is contrary to the obligations imposed upon Iron Mountain hereunder, and results in the activities contemplated hereunder unlawful, Depositor and/or Beneficiary will notify Iron Mountain and Iron Mountain will be relieved of its obligations hereunder unless and until such time as such activity is permitted.

(q) No Third Party Rights. This Agreement is made solely for the benefit of the Parties to this Agreement and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Agreement unless otherwise agreed to by all the Parties hereto.

(r) Entire Agreement. The Parties agree that this Agreement, which includes all the Exhibits attached hereto and all valid Work Requests and SOWs submitted by the Parties, is the complete agreement between the Parties hereto concerning the subject matter of this Agreement and replaces any prior or contemporaneous oral or written communications between the Parties. There are no conditions, understandings, agreements, representations, or warranties, expressed or implied, which are not specified herein. Each of the Parties herein represents and warrants that the execution, delivery, and performance of this Agreement has been duly authorized and signed by a person who meets statutory or other binding approval to sign on behalf of its business organization as named in this Agreement. This Agreement may only be modified by mutual written agreement of all the Parties.

(s) Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

(t) Survival. Sections 6 (Term and Termination), 7 (Infringement Indemnification), 8 (Warranties), 9 (Confidential Information), 10 (Limitation of Liability), 11 (Consequential Damages Waiver), and 12 (General) of this Agreement shall survive termination of this Agreement or any Exhibit attached hereto.

(balance of this page left intentionally blank – signature page follows)

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the Effective Date by their authorized representatives:

**DEPOSITOR**

| COMPANY NAME: | Waste2Energy Holdings, Inc |
|---|---|
| SIGNATURE: | F7C68211F4C6412... *Peter Bohan* |
| PRINT NAME: | DocuSigned By: Peter Bohan |
| TITLE: | CEO |
| DATE: | November 5, 2010 \| 07:23 PT |
| EMAIL ADDRESS | pbohan@waste2energy.com |

**BENEFICIARY**

| COMPANY NAME: | Waste to Energy Canada Inc |
|---|---|
| SIGNATURE: | 9B9A5B2C46DD4FC... *Alistair* |
| PRINT NAME: | DocuSigned By: Alistair Alistair |
| TITLE: | President |
| DATE: | November 4, 2010 \| 22:21 PT |
| EMAIL ADDRESS: | alistair@wtecanada.com |

**IRON MOUNTAIN INTELLECTUAL PROPERTY MANAGEMENT, INC.**

| SIGNATURE: | |
|---|---|
| PRINT NAME: | Mary K. English |
| TITLE: | Director of Operations |
| DATE: | 11/9/10 |
| EMAIL ADDRESS: | ipmclientservices@ironmountain.com |

Approved as to Form and Legal Content:
Iron Mountain Legal Department

*Barbara O'Neil Smith*

Barbara O'Neil Smith, Senior Contracts Specialist
Date: October 27, 2010

Approved as to Operational Content:
Iron Mountain Operations

*Stephanie DuBose*

Name: Stephanie DuBose
Date: October 27, 2010

**NOTE: AUTHORIZED PERSON(S)/NOTICES TABLE, BILLING CONTACT INFORMATION TABLE AND EXHIBITS FOLLOW**

DocuSign Envelope ID: ACF5043F-D206-42FB-BBF8-B31AE68535AB

## DEPOSITOR -- AUTHORIZED PERSON(S)/NOTICES TABLE

Provide the name(s) and contact information of the Authorized Person(s) under this Agreement. All notices will be sent to the person(s) at the address(es) set forth below. This is required information.

| | |
|---|---|
| PRINT NAME: | Peter Bohan |
| TITLE: | Mr. |
| EMAIL ADDRESS | pbohan@waste2energy.com |
| ADDRESS 1 | 1 Chick Springs Road |
| ADDRESS 2 | |
| CITY/STATE/PROVINCE | Greenville |
| POSTAL/ZIP CODE | 29609 |
| PHONE NUMBER | 864 679 1625 |
| FAX NUMBER | 864 679 1627 |

## BENEFICIARY -- AUTHORIZED PERSON(S)/NOTICES TABLE

Provide the name(s) and contact information of the Authorized Person(s) under this Agreement. All notices will be sent to the person(s) at the address(es) set forth below. This is required information.

| | |
|---|---|
| PRINT NAME: | Alistair Haughton |
| TITLE: | President |
| EMAIL ADDRESS | alistair@wtecanada.com |
| ADDRESS 1 | 2267 West 10th Avenue |
| ADDRESS 2 | |
| CITY/STATE/PROVINCE | Vancouver, BC, Canada |
| POSTAL/ZIP CODE | V6K 2J1 |
| PHONE NUMBER | 1-250-702-3891 |
| FAX NUMBER | 1-604-737-7367 |

## IRON MOUNTAIN INTELLECTUAL PROPERTY MANAGEMENT, INC.

All notices should be sent to ipmclientservices@ironmountain.com OR

Iron Mountain Intellectual Property Management, Inc., Attn: Client Services
2100 Norcross Parkway, Suite 150
Norcross, Georgia, 30071, USA.
Telephone: 800-875-5669
Facsimile: 770-239-9201

DocuSign Envelope ID: ACF5043F-D206-42FB-BBF8-B31AE68535AB

BILLING CONTACT INFORMATION TABLE

Please provide the name and contact information of the Billing Contact under this Agreement. All Invoices will be sent to this individual at the address set forth below.

### DEPOSITOR

| PRINT NAME: | |
|---|---|
| TITLE: | |
| EMAIL ADDRESS | |
| STREET ADDRESS | |
| PROVINCE/CITY/STATE | |
| POSTAL/ZIP CODE | |
| PHONE NUMBER | |
| FAX NUMBER | |
| PURCHASE ORDER # | |

### BENEFICIARY

| PRINT NAME: | Alistair Haughton |
|---|---|
| TITLE: | President |
| EMAIL ADDRESS | alistair@wtecanada.com |
| STREET ADDRESS | 2267 West 10th Avenue |
| PROVINCE/CITY/STATE | British Columbia |
| POSTAL/ZIP CODE | V6K 2J1 |
| PHONE NUMBER | 1-250-702-3891 |
| FAX NUMBER | |
| PURCHASE ORDER # | |

**MUST BE COMPLETED**    **Exhibit A - Escrow Service Work Request - Deposit Account Number:** _38499_

| SERVICE<br>Check box(es) to order service | SERVICE DESCRIPTION – THREE PARTY ESCROW AGREEMENT<br>All services are listed below. Services in shaded tables are required for every new escrow account set up. Some services may not be available under the Agreement. | ONE-TIME FEES | ANNUAL FEES | PAYING PARTY<br>Check box to identify the Paying Party for each service below. |
|---|---|---|---|---|
| ☒ Setup Fee | Iron Mountain will setup a new escrow deposit account using a standard escrow agreement. Custom contracts are subject to the Custom Contract Fee noted below. | $1,500 | | ☐ Depositor - OR -<br>☒ Beneficiary |
| ☒ Deposit Account Fee- including Escrow Management Center Access | Iron Mountain will set up one deposit account to manage and administrate access to Deposit Material that will be securely stored in controlled media vaults. Furthermore, Iron Mountain will provide account services that include unlimited deposits, electronic vaulting, access to Iron Mountain Connect™ Escrow Management Center for secure online account management, submission of electronic Work Requests, and communication of status. A Client Manager will be assigned to each deposit account and provide training upon request to facilitate secure Internet access to the account and ensure fulfillment of Work Requests. An oversize fee of $200 USD per 1.2 cubic foot will be charged for deposits that exceed 2.4 cubic feet. | | $1,000 | ☐ Depositor - OR -<br>☒ Beneficiary |
| ☒ Beneficiary Fee including Escrow Management Center Access | Iron Mountain will fulfill a Work Request to add a Beneficiary to an escrow deposit account and manage access rights associated with the account. Beneficiary will have access to Iron Mountain Connect™ Escrow Management Center for secure online account management, submission of electronic Work Requests, and communication of status. A Client Manager will be assigned to each deposit account and provide training upon request to facilitate secure Internet access to the account and ensure fulfillment of Work Requests. | | $700 | ☐ Depositor - OR -<br>☒ Beneficiary |
| ☐ Add Deposit Tracking Notification | At least semi-annually, Iron Mountain will send an update reminder to Depositor. Thereafter, Beneficiary will be notified of last deposit. | N/A | $375 | ☐ Depositor - OR -<br>☐ Beneficiary |
| ☐ Add File List (Verification Report) | Iron Mountain will fulfill a Work Request to perform a File Listing Report, which includes a deposit media readability analysis, a file listing, a file classification table, virus scan outputs, and assurance of completed deposit questionnaire. A final report will be sent to the Paying Party regarding the Deposit Material to ensure consistency between Depositor's representation (i.e., Exhibit B and Deposit Questionnaire) and stored Deposit Material. Deposit must be provided on CD, DVD-R, or deposited sFTP. | $2,500 | N/A | ☐ Depositor - OR -<br>☐ Beneficiary |
| ☐ Add Level 1 - Inventory and Analysis Test | Iron Mountain will perform an Inventory Test on the initial deposit, which includes Analyzing deposit media readability, virus scanning, developing file classification tables, identifying the presence/absence of build instructions, and identifying materials required to recreate the Depositor's software development environment. Output includes a report which will include build instructions, file classification tables and listings. In addition, the report will list required software development materials, including, without limitation, required source code languages and compilers, third-party software, libraries, operating systems, and hardware, as well as Iron Mountain's analysis of the deposit. | $5,000 or based on SOW if custom work required | N/A | ☐ Depositor - OR -<br>☐ Beneficiary |
| [X] Add Level 2 Deposit Compile Test | Iron Mountain will fulfill a Work Request to perform a Deposit Compile Test, which includes the outputs of the File Listing Report and the Level 1 - Inventory Test as described above plus recreating the Depositor's software development environment, compiling source files and modules, linking libraries and recreating executable code, pass/fail determination, creation of comprehensive build instructions with a final report sent to the Paying Party regarding the Deposit Material. The Paying Party and Iron Mountain will agree on a custom Statement of Work ("SOW") prior to the start of fulfillment. | Based on SOW | N/A | ☐ Depositor - OR -<br>☒ Beneficiary |
| ☐ Add Level 3 - Binary Comparison | Iron Mountain will fulfill a Work Request to perform one Deposit Usability Test - Binary Comparison which includes a comparison of the files built from the Deposit Compile Test to the actual licensed technology on the Beneficiary's site to ensure a full match in file size, with a final report sent to the Requesting Party regarding the Deposit Material. The Paying Party and Iron Mountain will agree on a custom Statement of Work ("SOW") prior to the start of fulfillment. | Based on SOW | N/A | ☐ Depositor - OR -<br>☐ Beneficiary |
| ☐ Add Level 4 - Full Usability | Iron Mountain will fulfill a Work Request to perform one Deposit Usability Test - Full Usability which includes a confirmation that the built applications work properly when installed, based on pre-determined test scripts provided by the Parties. A final report will be sent to the Paying Party regarding the Deposit Material. The Paying Party and Iron Mountain will agree on a custom Statement of Work ("SOW") prior to the start of fulfillment. | Based on SOW | N/A | ☐ Depositor - OR -<br>☐ Beneficiary |
| ☐ Add Dual/Remote Vaulting | Iron Mountain will fulfill a Work Request to store deposit materials in one additional location as defined within the Service Agreement. Duplicate storage request may be in the form of either physical media or electronic storage. | N/A | $500 | ☐ Depositor - OR -<br>☐ Beneficiary |
| ☐ Release Deposit Material | Iron Mountain will process a Work Request to release deposit material by following the specific procedures defined in Exhibit C "Release of Deposit Material" the Escrow Service Agreement. | $500 | N/A | ☐ Depositor - OR -<br>☐ Beneficiary |
| ☐ Add Custom Services | Iron Mountain will provide its Escrow Expert consulting based on a custom SOW mutually agreed to by all Parties. | $175/hour | N/A | ☐ Depositor - OR -<br>☐ Beneficiary |
| ☐ Custom Contract Fee | Custom contracts are subject to the Custom Contract Fee, which covers the review and processing of custom or modified contracts. | $750 | N/A | ☐ Depositor - OR -<br>☐ Beneficiary |

DocuSign Envelope ID: ACF5043F-D206-42FB-BBF8-B31AE68535AB

## EXHIBIT B
### DEPOSIT MATERIAL DESCRIPTION

COMPANY NAME: _____ DEPOSIT ACCOUNT NUMBER: _*38499*_

DEPOSIT NAME _____ AND DEPOSIT VERSION _____
(Deposit Name will appear in account history reports)
DEPOSIT MEDIA (PLEASE LABEL ALL MEDIA WITH THE DEPOSIT NAME PROVIDED ABOVE)

| MEDIA TYPE | QUANTITY | MEDIA TYPE | QUANTITY |
|---|---|---|---|
| ☐ CD-ROM / DVD | | ☐ 3.5" Floppy Disk | |
| ☐ DLT Tape | | ☐ Documentation | |
| ☐ DAT Tape | | ☐ Hard Drive / CPU | |
| | | ☐ Circuit Board | |

| | TOTAL SIZE OF TRANSMISSION (SPECIFY IN BYTES) | # OF FILES | # OF FOLDERS |
|---|---|---|---|
| ☐ Electronic Deposit | | | |
| ☐ Other (please describe below): | | | |
| | | | |

DEPOSIT ENCRYPTION (Please check either "Yes" or "No" below and complete as appropriate)

Is the media or are any of the files encrypted? ☐ Yes or ☐ No

If yes, please include any passwords and decryption tools description below. Please also deposit all necessary encryption software with this deposit.
Encryption tool name_____ Version _____
Hardware required _____
Software required _____
Other required information_____

DEPOSIT CERTIFICATION (Please check the box below to Certify and Provide your Contact Information)

| ☐ I certify for Depositor that the above described Deposit Material has been transmitted electronically or sent via commercial express mail carrier to Iron Mountain at the address below. | ☐ Iron Mountain has inspected and accepted the above described Deposit Material either electronically or physically. Iron Mountain will notify Depositor of any discrepancies. |
|---|---|
| NAME: | NAME: |
| PRINT NAME: | PRINT NAME: |
| DATE: | DATE: |
| EMAIL ADDRESS: | |
| TELEPHONE NUMBER: | |
| FAX NUMBER: | |

<u>Note:  If Depositor is physically sending Deposit Material to Iron Mountain, please label all media and mail all Deposit Material with the appropriate Exhibit B via commercial express carrier to the following address:</u>
Iron Mountain Intellectual Property Management, Inc.      Telephone: 800-875-5669
Attn: Vault Administration      Facsimile: 770- 239-9201
2100 Norcross Parkway, Suite 150
Norcross, GA 30071

# EXHIBIT C

### RELEASE OF DEPOSIT MATERIAL
### Deposit Account Number: _3 8 4 9 9_

Iron Mountain will use the following procedures to process any Beneficiary Work Request to release Deposit Material. All notices under this Exhibit C shall be sent pursuant to the terms of Section 12(h) Notices.

1. Release Conditions. The Depositor and Beneficiary agree that a Work Request for the release of the Deposit Material shall be based solely on one or more of the following conditions (defined as "Release Conditions"):

    (I) Depositor has ceased to do business as a going concern and no successor(s) has (have) been appointed; or

    (II) (i) Depositor and their Affiliates have not responded to Beneficiary's request for service on a Critical Defect or Major Defect (each as defined in Exhibit A to the Development and Support Agreement dated [June 7, 2010] between Depositor and the Beneficiary - the "Development and Support Agreement") within 48 hours from receipt of such request; (ii) Beneficiary has thereafter sent written notice of its intent to seek a release of the Deposit Materials from escrow to Depositor; and (iii) Deposit has failed to respond to such notice of intent within a further 5 business days from receipt of such notice of intent; or

    (III)(i) Depositor or any of its Affiliates have responded to each of the requests and notices described in subsection (II) above and Depositor and its Affiliates have failed to commence and diligently pursue within 5 business days of the expiration of Depositor's applicable response period as set forth above, such actions as are necessary to remedy the claimed Critical Defect or Major Defect,; (ii) Depositor has thereafter sent written notice of its intent to seek a release of the Deposit Materials from escrow to Depositor and (iii) Depositor and its Affiliates have not commenced and continued to diligently pursue actions as may be reasonably necessary to remedy such Critical Defect or Major Defect within 2 business days from such notice (for avoidance of doubt, failure of a Third Party to deliver services or parts necessary to remedy a defect shall not be deemed a failure to diligently pursue the obligations to remedy a defect); or

    (IV)Depositor shall have: (A) (i) filed in any court or agency seeking liquidation, dissolution, winding-up of its business under any bankruptcy, insolvency or other similar act or law of any jurisdiction now or hereafter in effect, (ii) been served with an involuntary petition in bankruptcy seeking liquidation, dissolution, winding-up of its business under any bankruptcy, insolvency or other similar act or law of any jurisdiction now or hereafter in effect, which petition is not dismissed within thirty (30) days after the filing thereof; or (iii) otherwise commenced dissolution, liquidation or winding-up of its business; and (B) Depositor shall have failed to provide (either directly or through its designees or Affiliates) the Development Services (as defined in the Development and Support Agreement) in accordance with the terms of the Development and Support Agreement or under the License Agreement; or (C) the License Agreement is in any way disclaimed by any receiver, trustee, custodian or other person with similar powers or other agent appointed in respect of the Licensor or in respect of all or a substantial portion of its property or assets; and

    (V) "respond or "responded" with respect to Depositor and its Affiliates means to provide an initial response to Beneficiary's request for service by telephone, in person or via e-mail that acknowledges receipt of the request for assistance and provides a timeline to develop an action plan within the applicable time period; and

    (VI) for purpose of this section, actions "necessary to remedy a defect" include without limitation, any actions taken within the applicable time period by Depositor in furtherance of formulating a plan to remedy the defect, coordinating with Beneficiary to implement any such plan, and taking any actions to implement such plan.

2. Release Work Request. A Beneficiary may submit a Work Request to Iron Mountain to release the Deposit Material covered under this Agreement. Iron Mountain will send a written notice of this Beneficiary Work Request within five (5) business days to the Depositor's Authorized Person(s).

3. Contrary Instructions. From the date Iron Mountain mails written notice of the Beneficiary Work Request to release Deposit Material covered under this Agreement, Depositor Authorized Person(s) shall have five (5) business days to deliver to Iron Mountain contrary instructions. Contrary instructions shall mean the written representation by Depositor that a Release Condition has not occurred or has been cured ("Contrary Instructions"). Contrary Instructions shall be on company letterhead and signed by a Depositor Authorized

Person. Upon receipt of Contrary Instructions, Iron Mountain shall promptly send a copy to Beneficiary's Authorized Person(s). Additionally, Iron Mountain shall notify both Depositor and Beneficiary Authorized Person(s) that there is a dispute to be resolved pursuant to the Disputes provisions of this Agreement. Iron Mountain will continue to store Deposit Material without release pending (i) joint instructions from Depositor and Beneficiary with instructions to release the Deposit Material; or (ii) dispute resolution pursuant to the Disputes provisions of this Agreement; or (iii) withdrawal of Contrary Instructions from Depositor's Authorized Person or legal representative; or (iv) receipt of an order from a court of competent jurisdiction.

4. <u>Release of Deposit Material</u>. If Iron Mountain does not receive timely Contrary Instructions from a Depositor Authorized Person, Iron Mountain is authorized to release Deposit Material to the Beneficiary. Iron Mountain is entitled to receive any undisputed, unpaid Service Fees due Iron Mountain from the Parties before fulfilling the Work Request to release Deposit Material covered under this Agreement. Any Party may cure a default of payment of Service Fees.

5. <u>Termination of Agreement Upon Release</u>. This Agreement will terminate upon the release of Deposit Material held by Iron Mountain.

6. <u>Right to Use Following Release</u>. Beneficiary has the right under this Agreement to use the Deposit Material for the sole purpose of continuing the benefits afforded to Beneficiary by the License Agreement. Notwithstanding, the Beneficiary shall not have access to the Deposit Material unless there is a release of the Deposit Material in accordance with this Agreement. Beneficiary shall be obligated to maintain the confidentiality of the released Deposit Material.

## EXHIBIT Q
### ESCROW DEPOSIT QUESTIONNAIRE

*Introduction*

From time to time, technology escrow beneficiaries may exercise their right to perform verification services. This is a service that Iron Mountain provides for the purpose of validating relevance, completeness, currency, accuracy and functionality of deposit materials.

*Purpose of Questionnaire*

In order for Iron Mountain to determine the deposit material requirements and to quote fees associated with verification services, a completed deposit questionnaire is requested. It is the responsibility of the escrow depositor to complete the questionnaire.

*Instructions*

Please complete the questionnaire in its entirety by answering every question with accurate data. Upon completion, please return the completed questionnaire to the beneficiary asking for its completion.

*Escrow Deposit Questionnaire*

**General Description**

1. What is the general function of the materials to be placed into escrow?
2. On what media will the source code, if any, be delivered?
3. If the deposit is on magnetic tape media, what tape format (e.g. DAT DDS4, DLT 8000, LTO-3, etc.) will be used for the deposit?
4. Again if the deposit is on tape, what operating system and version was used to create the tape and what tools (either native OS or commercial (e.g. Backup Exec, NetBackup, etc.) were used to load the data; if a third party or commercial software tool was used, please specify the vendor and exact version of the tool used.
5. Will the deposit be in the format of a database/repository of any type of Versioning or Configuration Management Tool (e.g. Visual Source Safe, Clearcase, Perforce, etc.) or will the software in the deposit be in a clear text/native file system format? If a Versioning or CM tool will be necessary to examine any part the deposit contents, please specify the Vendor and tool and exact version used.
6. Is the software deposit encrypted, including password protected archives, in any way? If so, what tool and version will be used to perform the encryption and will all necessary userid's, passwords or encryption keys be provided to support extraction of the software?
7. What is the total uncompressed size of the deposit in megabytes?

**Requirements for the Execution of the Software Protected by the Deposit**

1. What are the system hardware requirements to successfully execute the software? (memory, disk space, etc.); please include any additional peripheral devices that may be necessary to support correct function of the software/system.
2. What is the minimum number of machines required to completely set up the software sufficient to support functional testing? What Operating systems and version are required for each machine?
3. Beyond the operating systems, what additional third party software and tools are required to execute the escrowed software and verify correct operation? Please provide vendor and versions of all third party tools or libraries required to completely configure a system suitable to support functional testing.
4. If a database of any kind is required to support functional testing of the software, does the escrow deposit contain or can the depositor provide scripts and backups/imports necessary to create a database instance suitable to support functional testing. Note: a database containing test data is satisfactory to support functional testing so long as the data is realistic.
5. Approximately how much time is required to setup and configure a system suitable to support functional testing?
6. Approximately how much time would be required to perform a set of limited tests once a test system is configured?
7. Does the escrow deposit contain or can the depositor provide test plans, scripts or procedures to facilitate testing?
8. With the exception of any database identified above, are any connections to external data sources, feeds or sinks required in order to support the proper functioning of the software and to support testing of the software?

**Requirements for the Assembly of the Deposit**

1. Describe the nature of the source code in the deposit. (Does the deposit include interpreted code, compiled source, or a mixture? How do the different parts of the deposit relate to each other?) What types of source code make up the escrow deposit (e.g. – C++, Java, etc.)
2. How many build processes are there?
3. How many unique build environments are required to assemble the material in the escrow deposit into the deliverables?

4. What hardware is required for each build environment to compile the software? (including memory, disk space, etc.)
5. What operating systems (including versions) are used during compilation? Is the software executed on any other operating systems/version?
6. How many separate deliverable components (executables, share libraries, etc.) are built?
7. What compilers/linkers/other tools (brand and version) are necessary to build the application?
8. What, if any, third-party libraries are used to build the software? Please specify vendor, tool name and exact or minimum required version.
9. If a database of any kind is necessary to support compilation, is a running instance of the database necessary or is a static instance consisting of the static and shared libraries and/or header files installed by the database sufficient to support compilation?
10. How long does a complete build of the software take? How much of that time requires some form of human interaction and how much is automated?
11. Does the escrow deposit contain formal build document(s) describing the necessary steps for build system configuration and compilation?
12. Do you have an internal QA process? If so, please give a brief description of the testing process.
13. Please list the appropriate technical person(s) Iron Mountain may contact regarding this set of escrow deposit materials.

*Please provide your technical verification contact information below:*

| | |
|---|---|
| **COMPANY:** | |
| **SIGNATURE:** | |
| **PRINT NAME:** | |
| **ADDRESS 1:** | |
| **ADDRESS 2:** | |
| **CITY, STATE, ZIP** | |
| **TELEPHONE:** | |
| **EMAIL ADDRESS:** | |

For additional information about Iron Mountain Technical Verification Services, please contact
Iron Mountain at 800-875-5669.



## Certificate of Completion

Envelope Number: ACF5043FD20642FBBBF8B31AE68535AB      Status: Completed
Subject: Iron Mountain Electronic Signature Request
Source Envelope:
Document Pages: 15      Signatures: 2      Envelope Originator:
Certificate Pages: 1      Initials: 0      Cheryl McDonough
AutoNav: Enabled      148 Cook Street
EnvelopeId Stamping: Enabled      Billerica, MA 1821
     cheryl.mcdonough@ironmountain.com
     IP Address: 204.14.234.8

## Record Tracking

Status: Original      Holder: Cheryl McDonough      Location: DocuSign
     11/1/2010 6:54:01 AM PST      cheryl.mcdonough@ironmountain.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Alistair | 9B9A5B2C16DD4FC... | Sent: 11/1/2010 7:04:10 AM PT |
| alistair@wtecanada.com | *alistair* | Delivered: 11/4/2010 10:06:32 PM PT |
| President | DocuSigned By: Alistair | Signed: 11/4/2010 10:21:04 PM PT |
| Waste to Energy Canada Inc | Using IP Address: 173.35.244.213 | |
| Security Level: Email, Account Authentication (None) | | |
| Consumer Disclosure: Not Offered ID: | | |
| Peter Bohan | F7C68211F4C6412... | Sent: 11/1/2010 7:04:10 AM PT |
| pbohan@waste2energy.com | *Peter Bohan* | Delivered: 11/5/2010 7:15:41 AM PT |
| Security Level: Email, Account Authentication (None) | DocuSigned By: Peter Bohan | Signed: 11/5/2010 7:23:33 AM PT |
| Consumer Disclosure: Not Offered ID: | Using IP Address: 74.92.28.9 | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/1/2010 7:04:10 AM PT |
| Certified Delivered | Security Checked | 11/5/2010 7:15:41 AM PT |
| Signing Complete | Security Checked | 11/5/2010 7:23:33 AM PT |
| Completed | Security Checked | 11/5/2010 7:23:33 AM PT |

# EXHIBIT C

EXHIBIT C



**From:** Chatmon, Pam
**Sent:** Wednesday, August 31, 2011 10:59 AM
**To:** 'alistair@wtecanada.com'
**Cc:** 'pbohan@waste2energy.com'
**Subject:** WTE Waste to Energy Canada - Termination Letter

Dear Alistair:

Several attempts have been made to collect the past due balance on Invoice Number N4144304 which is now 213 days past due. Per your contract payment was due upon receipt of the invoice. Listed below are the details regarding the invoice.

| | |
|---|---|
| Invoice Number: | N4144304 |
| Invoice Date: | 12-31-2010 |
| Amount: | $15,000.00 |
| Services Billed: | Level 4 – Full Usability |
| Paying Party Contact: | Alistair Haughton |
| Paying Party Company: | WTE Waste to Energy Canada, Inc. |
| Contract Party Account: | 38499 |

Every account is very important to Iron Mountain Intellectual Property Management and we want to give every opportunity to bring this account current. Per the terms of the contract, payment was due upon receipt of the invoice. If payment is not received by September 14, 2011, the above referenced account may be turned over to a third party collection agency.

If you have any questions or need instructions for maintaining the active status of your account, please contact me by email at pam.chatmon@ironmountain.com.

Thank you,
Pam Chatmon

CC:    Peter Bohan
       Waste2Energy Technology International Limited