# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> WASTE2ENERGY HOLDINGS, INC., <br><br> Alleged Debtor. | Chapter 11 <br><br> Case No. 11-12504 (KJC) |

### DECLARATION OF CHRISTOPHER D'ARNAUD-TAYLOR
### IN SUPPORT OF DEBTOR'S OPPOSITION TO TRUSTEE MOTION

I, CHRISTOPHER D'ARNAUD-TAYLOR ("Declarant") hereby declare as follows:

1. Declarant is Chairman of the Board of Waste2Energy Holdings, Inc., a Delaware corporation ("W2E") and the alleged debtor herein and is legally authorized and competent to make this declaration. Declarant has personal knowledge of the matters stated herein unless otherwise noted.

2. Declarant has been accused of incompetence, avarice and betrayal of W2E, its creditors and its investors by the Petitioning Creditors and others, in support of those creditors, who have petitioned the Court for the emergency appointment of a trustee and the dismissal of Declarant.

3. The accusations of the Petitioning Creditors are utterly false and call for drastic action that would completely destroy any potential value of W2E and eliminate the possibility of a successful reorganization and the continuation of the business of W2E and its subsidiaries.

4. Declarant, working with his CEO, John Murphy ("Murphy"), has been engaged for several months in intensive negotiations that have a strong probability of success that will (i) create obtain substantial and on-going financing from a major customer (although the actions of the Petitioning Creditors may well have jeopardized this alternative); and (ii) provide for the completion of W2E's major project in Dargavel, Scotland and the continuation of a new project recently ordered and underway in Baoshan, China. The personal relationships of Declarant and Murphy with the prospective financier and with the owner of the Dargavel facility in Scotland are absolutely necessary to the successful completion of these negotiations

5. Declarant appointed John Murphy, a former consultant to W2E after the Board of Directors of W2E, in May 2011, terminated the former CEO, Peter Bohan for cause. Mr. Bohan served as CEO from September 2009 until his termination

6. Declarant appointed Mr. Murphy because of his past experience as a turnaround expert and as a business owner and operator. In the past, he served as a receiver in certain significant matters and Declarant believes he is well-acquainted with maximizing the value of assets and dealing fairly with creditors.

7. As a consultant to the Company since 2008, Murphy was also intimately involved in the day to day operating problems that W2E was faced with and caused by the former CEO, Bohan.

8. The Petitioning Creditors offer absolutely no explanation for their accusation of personal aggrandizement of Declarant but make reference to the fact that Declarant was also the Chairman and Chief Executive Officer of a public company (Xethanol Corporation, case. No. 09-14102 (PJW)) that went through a bankruptcy. In fact when Mr. Taylor resigned from Xethanol in August 2006, the company had in excess of $25M in cash and no material debt. Its subsequent management changed the company's name to Global Energy and used up the substantial cash balance on its new strategy. Mr. Taylor was not involved with the company when it went into bankruptcy.

9. Moreover, Declarant was never implicated in any wrongdoing by the SEC and/or any other regulatory body. The reference in Paragraph 41 of the Emergency Motion is to an article by a publication that is well-known for writing unflattering articles about companies in which it holds a short position. There are no references to any sort of official or credible documents accusing Declarant of any negative behavior whatsoever.

10. The references to inconsistent SEC filings (Paragraphs 3 and 42) by W2E since 2009 refer to a period during which, until May 2011, Bohan was Chief Executive Officer. Despite the fact that Bohan filed a declaration in support of the Emergency Motion to have a Trustee appointed, all SEC filings were his responsibility as W2E's CEO during the period from 2009 through May 2011, when he was terminated for cause. Any questions as to inconsistency in SEC filings are

clearly Bohan's responsibility and happened on his watch. Prior to Bohan becoming CEO, W2E was always current in its filings.

11. As Chairman, Declarant has already taken significant steps towards remedying the incomplete and disorganized financial information of W2E resulting from Bohan's reign as CEO of W2E. Declarant, working with Murphy, caused W2E to employ a new Chief Financial Officer, a position that became vacant during Mr. Bohan's reign.

12. Mr. Bohan's incompetence, which lead to the appointment by Declarant of Mr. Murphy, was affecting the ability of W2E to survive. His actions or lack thereof, were actually contrary to W2E's survival. As an example, Bohan caused 1,000,000 shares of W2E's common stock to be issued to a third party that Bohan believed, without doing proper due diligence, was going to acquire W2E. Had Bohan done his due diligence, he would have uncovered the fact that the principals of that company had a past criminal history and would never have been able to close on the acquisition.

13. The funds received from the Debenture Holders, including the Petitioning Creditors, were raised while Bohan was CEO through a registered broker dealer, Charles Vista Securities ("CV"). CV had agreed to raise $10M in a debenture offering within a 90 day period. However, the offering took over a year to complete. The Petitioning Creditors were participants in that offering.

14. As a condition of CV undertaking the offering, Declarant was required to step down as CEO and CV required the Board of Directors to appoint

Bohan, who was picked by Greg Lorenzo ("Lorenzo") the head of CV. Declarant believes that Bohan was a valued client of Lorenzo and CV.

15. Of the approximately $10M raised, W2E was only able to utilize approximately $5M for its operations and implementation of its business plan because of the expenses of the offering and the holdback of the first year's interest on the debentures. CV retained approximately 18% in fees with 12% interest being held back to pay the Debenture Holders their first year's interest when due with additional funds specifically earmarked at each closing, of which there were many, for legal and accounting fees.

16. Declarant believes that the underlying financial problems of W2E were caused by the failure of CV to complete the debenture offering in a timely fashion as well as Bohan taking direction in his day to day operations of W2E from Lorenzo and not from W2E's Board of Directors.

17. The Petitioning Creditors, especially Luppino, Savage and Benkowski with Bohan have a long history of investing in deals with Lorenzo, many of which are also in distress. They represented they were accredited investors and now want to control W2E for their own benefit without any consideration of the intensity and difficulties of running a highly-regulated international enterprise and without any concern for the company's trade creditors and other stakeholders.

18. The Petitioning Creditors never consulted with the other Debenture Holders who are owed in total approximately three (3) times the amounts owed to the Petitioning Creditors but take this action because they do not like new

management's approach and apparently would like to revert back to the incompetent and underperforming tenure of Bohan who has spent over two years criticizing Murphy so he could run W2E and his only accomplishment was to put W2E into the position it now finds itself. Declarant believes that the Petitioning Creditors only resorted to this course of action when their previous instrument of control over the company's affairs, namely Bohan, was terminated for cause. Further their reliance upon the Chief Executive of Waste to Energy Canada ("WTEC"), Alistair Haughton, to support their petition reflects their prior and current history of consorting for their own benefit and not for the shareholders and creditors of W2E as a whole, with an entity and person with a history of false promises and interference in W2E's corporate affairs, including the misappropriation of W2E's intellectual property by representing on their website a video of the Dargaval plant in Scotland and claiming that it was theirs. As a result of this usurpation, W2E has an infuriated client in the UK. WTEC did not stop there. They made representations to our Scottish subsidiary, W2E Engineering, and then reneged on those representations resulting in W2E Engineering going into liquidation.

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, under penalty of perjury, this ___ day of September, 2011.

_____
Christopher d'Arnaud-Taylor